# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY

*v.*

THE CALUMET STOCK FARM.

*Opinion filed December 18, 1901.*

| | |
|---|---|
| 194 | 9 |
| 200 | 639 |
| 194 | 9 |
| 105a | 656 |
| 194 | 9 |
| 203 | 225 |
| 203 | 378 |
| 203 | 380 |
| 194 | 9 |
| 210 | 518 |
| 194 | 9 |
| 113a | 186 |

1. PLEADING—*gross negligence may be proved under averment of negligent and willful misconduct.* Gross negligence on the part of a railroad company may be proved under an allegation of negligent, willful and reckless misconduct on its part.

2. CARRIERS—*contract limiting liability of carrier must be assented to by shipper.* If a contract limiting the liability of the carrier is contained in a bill of lading, which, in its entirety, constitutes both a receipt and a contract, the burden is upon the carrier to show that the shipper consented to such restriction.

3. SAME—*carrier cannot limit liability for gross negligence.* It is beyond the power of a common carrier to exempt itself, by contract, from liability for acts of gross negligence or willful misconduct.

4. SAME—*whether shipper assented to restriction of liability and whether negligence was gross are questions of fact.* Whether a shipper assented to the carrier's restriction of liability contained in the bill of lading and whether the negligence which occasioned the injury was gross negligence are questions of fact conclusively settled by the judgments of the trial and Appellate Courts.

5. WITNESSES—*who are competent to testify as to value of race horses before and after the injury.* In an action by a shipper of race horses

against the carrier for injuries to the horses *en route*, witnesses who were engaged in buying and selling race horses, who had frequently seen the injured horses, before their injury, upon the track and in races, and who knew their speed and quality, may testify as to the value of such horses immediately before and after the injury.

6. New trial—*when new trial will not be awarded for newly discovered evidence.* A new trial will not be awarded on the ground of newly discovered evidence which is cumulative, or by way of impeachment, merely, and in its nature is not conclusive.

*C. & N. W. Ry. Co.*v.*Calumet Stock Farm,* 96 Ill. App. 337, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of DuPage county; the Hon. Charles A. Bishop, Judge, presiding.

Botsford, Wayne & Botsford, for appellant.

Aldrich & Worcester, and J. F. Snyder, for appellee.

Mr. Justice Hand delivered the opinion of the court:

This is an action brought against the appellant for an alleged injury to three horses of appellee, caused by an accident to the car in which they were being shipped from Geneva, Illinois, to Fort Wayne, Indiana. The declaration contained two counts. One charges negligent and the other willful and reckless misconduct on the part of appellant. The general issue was filed, and on the trial the jury returned a verdict for $1500, and a judgment was rendered against appellant for that amount, which has been affirmed by the Appellate Court for the Second District, and a further appeal has been prosecuted to this court.

· The evidence introduced on behalf of appellee tended to show that on August 10, 1893, it delivered to appellant, at Geneva, Illinois, three horses, viz., Roy Wilkes, Nutonian and Lady Roy, which were valuable for racing purposes, to be transported from that place, by way of Chicago, to Fort Wayne, Indiana; that the horses were

put on board a stock car, which, after it had reached Chicago, was set out of the train to which it had been attached and was standing in appellant's yard, and that a train, in backing up to connect with the car, struck the car with great force and that the horses were thrown down and injured. There was a conflict in the evidence as to whether the car, at the time of the accident, was in the yard of the defendant or the yard of the Pan Handle road, and as to whether the horses were injured at the time of said accident.

It is first contended by appellant that as the declaration charges willful and reckless negligence in causing the accident, such negligence must be proven to sustain the action. Under this declaration, which charged appellant with negligent, willful and reckless misconduct, there is no question but what appellee had the right to prove gross negligence; but were the contention of appellant correct, we are of the opinion the jury would have been justified in finding that the evidence showed the car containing said horses was handled in a willful and reckless manner. William Monteith, a groom who was on the car, testified: "It was dark. We went in the yards at Chicago; lay there a couple of hours; made a flying switch and struck our car. The draw-bar was broken. When the car struck I was on my knees changing the mare's bandages. I was thrown on my back. The lantern was knocked over; set fire to the straw. Roy Wilkes was at one end of the car. The horses were tied. When the car struck, halters were broken. The jolt of the car threw the horses down. The mare was down when I saw her. She fell down. When she came up she struck her head against the car. Nutonian went down. Made three attempts before he got up. He was strained across his loins. He tried to get up and could not until I lifted him. Roy Wilkes went down. We did not get out of the Chicago and Northwestern yards until the following night. They were fixing the car." F. H. Wardlow, who was in

the car, testified: "The accident was in the Northwestern yards. I was sitting in the car door. Roy Wilkes stood back and the other two horses stood in front, in the front end of the car. The car struck the side where Roy Wilkes was standing. It knocked me out of the door. When I looked in the car he was standing on his haunches. The other two horses, one was lying on top of the other. The lantern Monteith had was knocked down. One of the doors struck the trotting sulkey and smashed one wheel. Saw the next morning the draw-bar had been smashed." Kelley Freshwater, who was also in the car, testified: "The car hit the train hard, bounded back, put our lanterns out, knocked things down, threw down the door on the south side of the car. Roy Wilkes kind of tripped and fell. His head struck the water bucket. The horses kind of jumped up in the air, broke their halters, and Roy Wilkes struck his head with terrible force on the outside of the car. It was dark. Monteith went for a light. We gathered up the lanterns. Roy Wilkes was standing in the middle of the car and the other two horses on either side, with their halters broken. Trunks were slewed around,—the big chest turned around more than it was. Roy Wilkes had some hard knocks on the side of his head. Lady Roy had a little cut which she got from the trunk. Nutonian had a cut on the ankle that he got from struggling in the accident."

It is next contended that the horses were shipped under a contract which limited the liability of the appellant to the sum of $100 for each horse and to injuries which occurred upon its own line. The contract limiting the liability of the appellant is contained in a bill of lading which, in its entirety, constitutes both a receipt and contract, and is not binding upon the appellee for two reasons: First, there is no evidence in the record that the appellee assented thereto; and secondly, appellant cannot relieve itself, by contract, for an injury caused by its gross negligence. Furthermore, the questions of such

assent and negligence are questions of fact which have been determined adversely to the appellant both by the trial and Appellate Courts. (*Chicago and Northwestern Railway Co.* v. *Simon,* 160 Ill. 648; *Chicago and Northwestern Railway Co.* v. *Chapman,* 133 id. 96.) In *Chicago and Northwestern Railway Co.* v. *Simon, supra,* on page 653 we say: "Where a contract limiting the liability of the carrier is contained in a bill of lading which, in its entirety, constitutes both a receipt and contract, the *onus* is on the carrier to show the restrictions of the common law liability were assented to by the consignor. (*Field* v. *Chicago and Rock Island Railroad Co.* 71 Ill. 458; *Boscowitz* v. *Adams Express Co.* 93 id. 523.) And whether there is such assent is a question of fact. The mere receiving the bill of lading, without notice of the restrictions therein contained, does not amount to an assent thereto. (*United States Express Co.* v. *Haines,* 67 Ill. 137; *Anchor Line* v. *Dater,* 68 id. 369; *American Merchants' Union Express Co.* v. *Schier,* 55 id. 140; *Merchants' Despatch Transportation Co.* v. *Joesting,* 89 id. 152; *Erie and Western Transportation Co.* v. *Dater,* 91 id. 195.) In this case, whether the limitation in the bill of lading was assented to by the consignor was a question of fact determined by the Appellate and trial courts adversely to appellant, and no question of law is presented in this court under which those questions of fact are before us." And in *Chicago and Northwestern Railway Co.* v. *Chapman, supra,* on page 107 it is said: "A common carrier cannot, even by express contract, exempt itself from liability resulting from the gross negligence or willful misconduct committed by itself or its servants or employes. Whatever may be the rule elsewhere, in this State the common carrier cannot contract for exemption from responsibility for a failure on its part, or that of its servants, to exercise ordinary care in the transaction of its business. If the carrier may by contract limit its liability for gross negligence or willful misfeasance to any extent, it may contract for total exemption. A contract for exemption

from liability for its torts being void, as against public policy, it cannot shield itself as to any portion of the damages to person or property occasioned by its gross negligence or willful misconduct.   As we have seen, it may protect itself against fraud by requiring the consignee to state the value of the thing shipped; but when it receives property for transportation it must exercise reasonable care until it reaches its place of destination, and will not be permitted to absolve itself from that responsibility."

The court gave to the jury, upon behalf of the appellee, the following instruction, which the appellant claims was reversible error:

"The court instructs the jury that if you find for the plaintiff in this case, that in estimating the plaintiff's damages you have a right to take into consideration the difference in the fair market value of the horses in question, and each of them, at the time of the shipping of said horses from Geneva, Illinois, to Fort Wayne, Indiana, and their fair market value after the injury complained of, as shown by the evidence in this case, and also whatever sum or sums of money the evidence shows the plaintiff paid out in endeavoring to cure said horses, or either of them, from the injuries complained of, and all loss sustained by the plaintiff by reason of such injury, if any such loss is shown by the evidence in this case, not exceeding the value of said horses and not exceeding the amount claimed in the plaintiff's declaration."

The criticism made upon this instruction is, that it does not limit the market value of said horses to the time immediately before and after said injury, and assumes that the appellee has been put to expense in endeavoring to cure said horses from the injury complained of.   The instruction, in case the jury find for the appellee, clearly limits the market value of the horses to the time immediately preceding and following the injury, and confines the jury to such expenses as the evidence shows the

appellee to have incurred in endeavoring to cure said horses, and in our opinion is not subject to the criticism made thereon.

The court admitted certain testimony offered by the appellee as to the value of said horses immediately before and subsequent to the injury, which was objected to by the appellant on the ground that the witnesses who so testified did not have sufficient knowledge upon the subject to authorize them to express an opinion as to the value of said horses. The witnesses who testified were engaged in buying, selling and handling trotting and pacing horses, had seen the horses of appellee frequently before the injury, upon the track and in races, and knew their speed, quality, etc. We think this testimony competent, the weight thereof being a question for the jury. In any event, this evidence did the appellant no harm, as the remaining evidence was sufficient to support the verdict. *Chicago and Great Western Railroad Co.* v. *Wedel*, 144 Ill. 9; *Doll* v. *People*, 145 id. 253.

The appellant, upon the trial, called as a witness one Freshwater, who gave material evidence in its behalf. On cross-examination he was shown a statement in writing purporting to have been signed and sworn to by him and asked if he signed and swore to it. He neither admitted nor denied signing and swearing to said statement. The appellee, on rebuttal, called its manager and book-keeper, who each testified that said statement was taken down in shorthand, written out upon the typewriter and signed and sworn to by Freshwater, and upon such proof the court admitted the statement in evidence for the purpose of impeachment. After Freshwater had heard the statement read he was re-called, and denied making the same or that he signed and swore to it. In support of a motion for a new trial the appellant filed the affidavit of the stenographer who said manager and book-keeper testified had taken such statement in shorthand and transcribed the same upon the typewriter, who

denied she had taken or transcribed the same or that she was in the employ of appellee at the date the same was purported to have been made. The appellant insists that it was surprised upon the trial by the introduction of said statement, and urges upon the showing made the court erred in refusing to grant it a new trial. The newly discovered evidence was cumulative and by way of impeachment only, and was not conclusive. The law is well settled that a new trial will not be awarded on the ground of newly discovered evidence when the evidence is cumulative or by way of impeachment merely, and in its nature is not conclusive. *Knickerbocker Ins. Co.* v. *Gould*, 80 Ill. 388; *Martin* v. *Ehrenfels*, 24 id. 187; *Friedberg* v. *People*, 102 id. 160; *Grady* v. *People*, 125 id. 122; *Monroe* v. *Snow*, 131 id. 126.

We find no reversible error in this record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*