## The Wabash Railroad Company v. F. E. Thomas.

1.  PUBLIC POLICY—*when contract for exemption from liability void
as against.*  Public policy will not permit a common carrier to contract
for exemption from liability for loss or damage resulting from the
failure on its part, or that of its servants, to exercise ordinary care in
the transaction of its business.

Action on the case for personal injuries.  Appeal from the Circuit
Court of Vermilion County; the Hon. JAMES W. CRAIG, Judge, presid-
ing.  Heard in this court at the November term, 1904.  Affirmed.
Opinion filed September 21, 1905.

C. N. TRAVOUS and D. D. EVANS, for appellant.

W. H. CLINTON, H. S. TANNER, and PENWELL & LINDLEY,
for appellee; WALTER C. LINDLEY, of counsel.

MR. JUSTICE BAUME delivered the opinion of the court.

Appellee recovered a verdict and judgment against ap-
pellant in the Circuit Court of Vermilion County, for $2,400,
for damages resulting from the alleged negligence of ap-
pellant, in the shipment of a car-load of horses from Coun-
cil Bluffs, Iowa, to Paris, Illinois.  The jury was justified
in finding from the evidence that appellee tendered to
appellant at Council Bluffs, twenty-five horses for ship-
ment to Paris by way of St. Louis; that appellee told ap-
pellant's agent at Council Bluffs and the conductor of
appellant's freight train, that he desired to have the horses
fed and watered at St. Louis, and that the conductor in-
formed appellee that the car would be taken to the stock
yards at St. Louis and there unloaded; that immediately
upon the arrival of the train at St. Louis the car was

transferred by appellant to its connecting line, the Big
Four, and by the latter road at once taken to Paris, without
affording appellee an opportunity to feed and water the
horses at the stock yards in St. Louis, and whereby he was
prevented, without his fault, from so doing; that upon the
arrival of the car at Paris, the horses were in such condition,
due to want of feed and water for about fifty-one hours,
that twelve of them sickened and died and others were
seriously and permanently injured; that appellee upon the
presentation to him by appellant's agent at Council Bluffs,
signed a contract limiting appellant's common law liability,
but that appellee had no actual knowledge of the terms of
the contract and did not in fact assent thereto.

If appellant is liable for the damages resulting to appel-
lee, it is practically conceded that the damages awarded by
the jury are not so excessive as to authorize this court to
interfere with the verdict.   The controverted questions of
fact in the case having been resolved by the jury against
appellant, and conclusively so upon this record, only ques-
tions of law remain to be decided, and so far as a determi-
nation of those questions contrary to the ruling of the trial
court could have influenced the verdict, they are presented
by appellant's criticism of certain instructions refused and
modified.

It is urged by appellant that it only undertook to carry
appellee's horses to St. Louis, and that its liability ceased
upon delivery of the car in accordance with such undertak-
ing.   True, the contract signed by appellee was for carriage
of the horses from Council Bluffs to St. Louis, and if appel-
lant had done nothing further and no injury had resulted
from its negligence there might be force in its contention.
The contract, however, was indorsed on its back, "Con-
signee F. E. Thomas, Paris, Ill.," and appellant in fact as-
sumed the duty of selecting its connecting line at St. Louis
to carry the horses to Paris and delivered the car to such
connecting line without consulting appellee.   The contract
should be construed, therefore, as appellant undertook to
perform it, viz., as a contract of carriage from Council
Bluffs to Paris.

Appellant seeks to avoid liability in this case because of a failure by appellee to comply with the provisions of the contract requiring appellee to feed and water the horses at his own risk and expense, and to make a claim for loss or damage, in writing, verified by his affidavit, and delivering the same to the freight claim agent of appellant at St. Louis, within ten days from the time the horses were removed from the car, and also under the provision in the contract limiting appellant's liability thereunder to its own line.

The contention that appellee agreed by the terms of the contract to feed and water the horses at his own risk and expense, and therefore, that appellant is not responsible for the injuries resulting to the horses from lack of feed and water, might well be disposed of by saying that the contract reasonably implies that appellant should afford appellee an opportunity to feed and water the horses in transit, and where damages result from failure of appellant so to do, it will not be permitted to escape liability by setting up such provision. W., St. L. & P. Ry. Co. v. Pratt, 15 Ill. App. 177. Appellee was led to believe that upon the arrival of the train at St. Louis the car would be taken to the stock yards, where an opportunity would be afforded him to feed and water the horses, and there is nothing in the contract to relieve appellant from liability for damages resulting from its failure to afford appellee such opportunity.

The provision in the contract limiting appellant's liability thereunder to its own line, is not involved here because the injury complained of resulted from appellant's failure to afford appellee an opportunity to feed and water the horses on its own line or while the car was under appellant's control.

If the contract should be held to bind appellee, the only provision here involved, operative to prevent a recovery, is the one requiring the shipper, within ten days from the time stock is removed from the car, to deliver to the freight claim agent at St. Louis, a claim in writing, verified by affidavit, of his loss or damage.

The trial court instructed the jury at the request of appellee, that the burden was upon appellant to show by a preponderance of the evidence that appellee assented to the terms of the contract signed by him, and refused several instructions offered by appellant, the substance of which is embodied in the following:

"The rule of law is, that where a man of mature years and sound mind, and able to read and write, signs an agreement, he is bound by the terms of the agreement signed by him, although he may be ignorant of them, unless he can prove by a preponderance of the evidence that he was induced to sign the agreement by fraud or misrepresentation. And, in this case, the court instructs the jury that the plaintiff is bound by the terms of the agreement offered in evidence, unless the jury further believe from the preponderance of the evidence that he was induced to sign the agreement by fraud or misrepresentation. Fraud and misrepresentation are never to be presumed. They must be proved."

The court also modified certain of the instructions offered by appellant, by casting the burden upon it to show that appellee knew of and assented to the terms of the contract.

As applied to ordinary contracts between individuals, the rule of law stated in the foregoing refused instruction, manifestly prevails, and in Black v. W., St. L. & P. Ry. Co., 111 Ill. 351, the court in discussing the law governing a contract similar to the one here involved, said: "Where a party of mature years and sound mind, being able to read and write, without any imposition or artifice to throw him off his guard, deliberately signs a written agreement without informing himself as to the nature of its contents, he will, nevertheless, be bound; for in such case the law will not permit him to allege, as matter of defense, his ignorance of that which it was his duty to know; particularly, where the means of information are within his reach and he neglects to avail himself of them. Applying this elementary principle to the case in hand, it was clearly the duty of appellant to have examined the contract in question and fully advise himself as to its contents before sign-

ing it, and if, by a failure to perform this duty, he has sustained an injury, he must suffer the consequence unless such failure was occasioned by the fraud or artifice of appellee." In some of the reported cases it has been held that public policy will not permit a common carrier to contract for exemption from liability for loss or damage resulting from the gross negligence or wilful misconduct of its servants or employees, but a more accurate statement of the rule is, that public policy will not permit a common carrier to contract for exemption from liability for loss or damage resulting from a failure on its part or that of its servants to exercise ordinary care in the transaction of its business. B. & O. S. W. R. R. v. Fox, 113 Ill. App. 180; C., R. I. & P. Ry. Co. v. Hamler, 215 Ill. 525.

It has been held, however, that a common carrier may by special contract with a shipper, restrict its liability in a reasonable manner with reference to collateral matters such as that it shall be liable only for loss or damage occurring on its own line; that the shipper shall take care of, load and unload and prevent the escape of stock in transit, and in case of loss or damage shall make a claim in writing therefor to a specified agent within a fixed time. B. & O. S.W. R. R. Co. v. Fox, *supra.*

The contract of shipment must stand or fall as a whole. It will not do to say as to some of the provisions of such contract that the burden is on the shipper to show that his signature to it was procured by fraud, artifice or misrepresentation, and as to others, that the burden is on the carrier to show that the shipper assented thereto.

Black v. W., St. L. & P. Ry. Co., *supra,* is authority sustaining the contention of appellant as to the propriety of giving the refused instructions, but the Supreme Court in later cases involving the same question has held that the burden is on the carrier to show that the shipper assented to the terms of such a contract. C. & N. W. Ry. Co. v. Calumet Stock Farm, 194 Ill. 9; C., C., C. & St. L. Ry. Co. v. Patton, 203 Ill. 376. Counsel for appellant are in error in stating that the contract involved in C. & N. W. Ry. Co.

574    APPELLATE COURTS OF ILLINOIS.

VOL. 122.] Junction Mining Co. v. Springfield Junct. Coal Co.

v. Calumet Stock Farm, *supra*, was not signed by the shipper. The statement of facts in the opinion of the Appellate Court for the Second District in that case, reported in the 96 Ill. App. 337, shows that the contract in question was signed by the agent of the Calumet Stock Farm.

Upon the authority of these later decisions of the Supreme Court the trial court was bound to rule as it did upon the instructions offered, and this court is bound to affirm such ruling.

The judgment is affirmed.

*Affirmed.*