568    APPELLATE COURTS OF ILLINOIS.

Illinois Match Co. v. C., R. I. & P. Ry. Co., 153 Ill. App. 568.

## Illinois Match Company, Appellee, v. Chicago, Rock Island & Pacific Railway Company, Appellant.

### Gen. No. 5,177.

1. COMMON CARRIERS—*what instruments may properly contain limitations upon liability.* The statutory inhibition against limitations of liability by a carrier in a receipt does not apply to bills of lading; such limitations may properly be inserted in bills of lading.

2. COMMON CARRIERS—*what does not effect limitation of liability.* While a carrier may restrict its liability by provisions contained in a bill of lading, yet the mere delivery of a bill of lading to a shipper is not sufficient to effect a limitation but in order to relieve itself from liability the carrier is bound to prove the assent of the shipper to such limitation, and in the absence of proof of such assent the presumption is that the shipper relied upon the common law liability of the carrier when delivery was made to the carrier duly consigned, and that there was no assent to any change from the common law liability.

3. COMMON CARRIERS—*what does not establish assent of shipper to limitations of liability contained in bill of lading.* Proof that a shipper had upon previous occasions received bills of lading containing limitations like those contained in the one in question, does not establish a *prima facie* case of assent.

4. COMMON CARRIERS—*what does not establish assent to limitations of liability contained in a bill of lading.* The acceptance of a shipping ticket by the shipper containing a reference to the conditions of the company's bill of lading, does not establish an assent to the limitations of liability contained in such bill of lading.

5. COMMON CARRIERS—*what competent to show lack of assent to limitations of liability contained in the bill of lading.* In order to show that the shipper did not assent to limitations of liability contained in the bill of lading, it is competent for himself and his witnesses to testify that they had never read the bill of lading, that they did not know at the time of receiving it what provisions and contents were contained therein, that they did not have any talk with any agent of the carrier concerning the terms and conditions of the bill of lading and that their attention had never, up to the time of the loss sued for, been called to the conditions and limitations contained in such bill of lading.

6. COMMON CARRIERS—*extent of liability defined.* In the absence of a special contract assented to by the shipper, a common carrier is an insurer of freight and can only relieve itself from liability for loss by showing that the same was occasioned by the act of God or

the public enemy or through some fault of the shipper or by reason of the inherent nature of the goods.

7. INSTRUCTIONS—*when containing abstract proposition of law will not reverse.* It is not error to give an instruction which correctly states a mere abstract rule of law unless its tendency is to mislead the jury.

Action in case. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed March 11, 1910. Rehearing denied April 13, 1910.

J. L. O'DONNELL, T. F. DONOVAN and J. A. BRAY, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

KNOX & AKIN, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The Illinois Match Company, the appellee, is engaged in the business of manufacturing and selling matches in the township of Joliet, in Will county. On June 16, 1904, it delivered to Chicago, Rock Island & Pacific Railway Company, the appellant, 555 cases of one kind and 70 cases of another kind of matches, loaded in a car of appellant railway which appellant had previously furnished for that purpose, which shipment was consigned by appellee to John T. Huner, Our Darling Siding, Queens County, New York. Appellee was manufacturing a special brand of matches called "Our Darling" for Huner. The siding in question was located on the Long Island Railroad. Appellant had obtained the shipments under this contract by assuring appellee that it could deliver said shipments in New York City on the third morning after it received them in Joliet. It charged a higher rate of freight because of the extra risk involved in the transportation of matches over that of ordinary freight. It issued a bill of lading on June 16, 1904, for these matches. This car reached New York City over the tracks of the New York Central & Hudson River Rail-

570          APPELLATE COURTS OF ILLINOIS.

Illinois Match Co. v. C., R. I. & P. Ry. Co., 153 Ill. App. 568.

road Company between 5:30 and 6:30 A. M. of June
21st and was placed on a certain storage track. In
the regular course of transportation it should have
next been placed upon a float or dock for transportation
across the river to the Long Island Railroad and it
would have taken about ten minutes to move the car
from said storage track to the float. This, however,
was not done, and at eight o'clock that evening it was
still on said storage track, some fourteen or fifteen
hours after it. could have been removed therefrom in
the ordinary course of business. It is a reasonable in-
ference that it would have reached its destination be-
fore . eight o'clock in the evening if it had been
promptly transported. About eight o'clock in the
evening smoke was seen issuing from the car. Em-
ployes of the New York Central Railroad opened the
car, found it full of smoke, found the packages loose
at the north end and quite a number of them on fire.
They were unable to save the .cargo and it was never
delivered. Appellee brought this suit against ap-
pellant to recover for said loss, and filed a declara-
tion containing two original and three additional
counts in which the liability of appellant was stated
in various ways. Defendant pleaded not guilty.
There was a jury trial and a verdict and a judgment
for appellee for $1,404.71, which was the exact amount
of the price at which the matches were to be sold to
Huner, less the freight charges, which had not been
paid. Defendant below prosecutes this appeal from
said judgment.

The bill of lading issued by appellant for said
matches, which was also appellee's receipt from ap-
pellant for the goods, contained provisions to the ef-
fect that appellant's liability should cease upon its
delivery of the goods to the next carrier; that it as-
sumed no other responsibility for the safe carriage of
the goods than should be incurred on its own road;
and that the legal remedy of appellee for all loss and
damage occurring in the transit of the packages should

Second District—April, 1910.     571

Illinois Match Co. v. C., R. I. & P. Ry. Co., 153 Ill. App. 568.

only be against the particular carrier in whose custody the packages were at the time of loss. Appellant proved that its line terminated in Chicago and that this loss occurred on the line of the New York Central, a connecting carrier, and it argues that under this bill of lading it is not responsible for the loss. By chapter 27 of the Revised Statutes it is enacted that whenever property is received by a common carrier to be transported from one place to another within or without the state, it shall not be lawful for such carrier to limit its common law liability to safely deliver such property at the place to which the same is to be transported, by any stipulation or limitation expressed in the receipt given for such property. To the same effect is section 33 of the Act in relation to fencing and operating railroads, embodied in chapter 114 of the Revised Statutes. This instrument was not only a receipt but also a bill of lading, and the statutory restriction does not apply to a bill of lading. We find it unnecessary to examine the many cases cited by counsel for appellant from other jurisdictions and the early cases in this state, because in our opinion the law governing this case has been fully discussed in recent decisions of our Supreme Court. Thus, it was held in C. & N. W. Ry. Co. v. Calumet Stock Farm, 194 Ill. 9, that where a contract limiting the liability of the carrier is contained in a bill of lading which is both a receipt and a contract, the burden is on the carrier to show that the restrictions of the common law liability were assented to by the consignor, and that the mere receiving of the bill of lading without actual notice of the restrictions therein contained does not amount to an assent thereto, and that whether the consignor did so assent is a question of fact. In C. C. C. & St. L. Ry. Co. v. Patton, 203 Ill. 376, where the bill of lading seems to have been signed by the shipper, who was the plaintiff, and where it was contended that because the shipper signed the bill of lading he therefore was bound thereby, it was held that the burden was on the carrier to show that the provisions of the

contract which limited the liability of the carrier were assented to by the consignor, and that, in the absence of any evidence, the presumption was that he did not assent to those terms. In Wabash R. R. Co. v. Thomas, 222 Ill. 337, where the bill of lading contained like provisions exempting the carrier from responsibility for loss occurring beyond its own lines, these principles were again stated and enforced, with a reference to many earlier Illinois cases. It follows therefore that while appellant could restrict its liability by provisions of this character in its bill of lading, yet the mere delivery of a bill of lading to appellee was not sufficient, but in order to relieve itself from liability it was bound to procure the assent of appellee thereto, and in the absence of such proof, the presumption would be that the shipper relied upon the common law liability of the carrier when it delivered the goods to it duly consigned, and that it did not assent to any change from that common law liability. While appellant had the burden of proving appellee's consent, it produced no proof on that subject, except the fact that appellant had frequently before that date delivered to appellee other bills of lading containing the same provision, from which appellant argues that appellee must have known the conditions of this bill of lading. Under the authorities above referred to this proof was insufficient to make even a *prima facie* case of the consent of the consignor to these limitations on the liability of the carrier. But appellee in rebuttal proved by its president, secretary, treasurer and manager, by those who shipped this carload of goods and received this bill of lading, that they had no knowledge till long after the shipping of these goods that appellant's bill of lading contained these provisions exempting it from liability for loss occurring beyond its own lines.

Appellant contends that in making the proof last mentioned appellee's witnesses were permitted to state conclusions and that this was error. In the main these

criticisms are not justified by the state of the record. The witnesses referred to were permitted to testify whether they had ever read the bill of lading; whether they at that time knew what provisions and conditions were contained in the printed part of the bill of lading; whether they had any talk with any agent of appellant concerning the terms and conditions .of the bill of lading; and whether their attention had ever, up to the time of the loss, been called to the conditions and limitations in the bill of lading. All these and such like inquiries and the answers thereto were proper and they showed that none of these officers and agents of appellee had ever read the bill of lading, or had any knowledge of its printed part where these limitations were set out in fine print, and that they had no conversation with any agent of appellant on the subject of these limitations. If the single question to a single witness, whether he ever assented or agreed . with appellant's agents that appellee should be bound by the terms and conditions in the bill of lading, be regarded as improperly calling for a conclusion, nevertheless appellant could not be injured by the answer, because that conclusion was the only one that could be drawn from the evidence already given. We therefore conclude that the jury were warranted in finding that the proof did not show that appellee had consented to these limitations upon its liability and, therefore, that appellant was subject to the common law liability of a common carrier, which is that of an insurer.

Appellee argues that in view of the shipping ticket which appellee delivered to appellant with the goods, and which described, not a carload lot, but a given number of packages, to be delivered to a certain destination, and of the fact that the bill of lading did not specify any other carrier over whose lines the goods were to be transported, the restrictions contained in the bill of lading could not in any event apply to these goods, but that even if the proofs had shown that these

limitations had been assented to by appellee, still the bill of lading bound appellant to deliver the goods to the consignee at the destination indicated, and that if appellant delivered the goods to other carriers, it made them its agents to deliver the goods at the destination. In view of our conclusion already stated, we think it unnecessary to determine the correctness of this position.

In the absence of a special contract assented to by the consignor, the common carrier is an insurer of freight, and can only relieve itself from liability for loss by showing that the loss was occasioned by the act of God or the public enemy, or through some fault of the shipper, or by reason of the inherent nature of the goods. This loss was not occasioned by the act of God or of a public enemy. Appellant contends that it must have been due to some fault of the shipper or to the inherent nature of the goods. It would unduly extend this opinion to describe in detail the manner in which these boxes of matches were packed in this car, as shown by appellee's proofs. We think it sufficient to say that the proof shows that they were packed with very great care, tightly, in practically air tight boxes, and that the boxes were packed so tightly in the car that there was substantially no play allowed and no chance for the boxes to be removed from the position in the car where they were placed, except by some external violence; that they could not ignite until the packages were broken open and the matches were given access to the external air; and that these matches were packed in the safest way known to manufacturers and shippers of such articles. Appellant introduced the depositions of several men who worked in the New York Central yards in New York city that day, and who testified that no other car came near the car in question during the fifteen hours that it stood upon that side track and that nothing known to them happened to the car. Appellant proved nothing as to what happened to this car while it was on its own

line nor after it left its line and before it reached New York city, and a consideration of the evidence of the employes of the New York Central leaves it extremely doubtful whether they knew all about what happened to that car during all of the fifteen hours when it stood upon that side track. We are satisfied that the jury were warranted in finding from the evidence that the loss was not occasioned by the fault of the shipper, nor by the inherent nature of the goods, but that at some time recently before the fire something had happened to this car to dislodge these cases from the position in which they were packed and to expose the matches to the air and to ignite them, and that the loss must be borne by the carrier.

Complaint is made of the instructions given at the request of appellee. Several of these stated abstract propositions of law only and might have been refused for that reason. But they stated correctly the rules of law prevailing in this state which govern the questions at issue in this case. It is not error to give an instruction which correctly states a mere abstract rule of law, unless its tendency is to mislead the jury. Betting v. Hobbett, 142 Ill. 72; C. & A. R. R. Co. v. City of Pontiac, 169 Ill. 155-172; and Chicago City Ry. Co. v. Anderson, 193 Ill. 9. We are of the opinion that the court properly refused instructions Nos. 24, 25 and 26, requested by appellant, upon the authorities already cited. No. 26 sought to defeat appellee by reason of certain language in the shipping ticket. The shipping ticket was on a blank form, printed by a firm in Chicago. It gave the name of the consignor and consignee and place of consignment, and directed the goods to be delivered to the consignee at that place "as per conditions of company's bill of lading." These words were in the printed form. Appellant contends that by issuing that ticket appellee assented to the limitations contained in the bill of lading afterwards delivered to it by appellant. We are of opinion that this position is untenable, and that the in-

struction was properly refused for that reason and for other reasons appearing on its face.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*