## J. R. Bean, Defendant in Error, v. William J. Jackson, Receiver of Chicago & Eastern Illinois Railroad Company, Plaintiff in Error.

1. CARRIERS, § 248*—*when evidence shows that agent signed contract of shipment under directions of shipper.* In an action against an initial carrier for damages for the loss of part of a shipment of hogs, alleged to be due to delay in transportation and to failure to water or drench the hogs or take proper care of them, evidence *held* sufficient to show that an agent of the shipper, who signed the shipping contract in his own name, acted with the consent of and under the directions of the shipper.

2. CARRIERS, § 223*—*when shipper and agent not asking for unconditional bill of lading bound by bill issued.* Under the Uniform Bill of Lading Act, sec. 10 (J. & A. ¶ 2176), providing that where a consignor receives a bill of lading and makes no objection in writing within the required time, neither the consignor nor any person who accepts delivery of the goods, nor any person who seeks to enforce any provision of the bill, shall be allowed to deny that he is bound by such terms and conditions, so far as they are not con-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

trary to law or public policy, where neither a consignor nor his authorized agent makes any objection to a bill of lading issued in the name of the agent, nor asks for an unconditional bill of lading, they are bound by such contract irrespective of their lack of knowledge of its contents.

3. CARRIERS, § 240*—*when contract of shipment of live stock limiting liability of initial carrier to its own line is valid.* Under the Uniform Bill of Lading Act (J. & A. ¶ 2166 *et seq.*), a contract of shipment of live stock, by which an initial carrier limits its liability to the time the stock is on its line, is valid where the shipper makes no objection to the bill of lading containing such stipulations and signs the same, since he is conclusively presumed to have known and assented to the same and is not allowed to deny that he is bound thereby.

Error to the Circuit Court of Moultrie county; the Hon. GEORGE E. SENTEL, Judge, presiding. Heard in this court at the October term, 1916. Reversed with finding of fact. Opinion filed October 11, 1917.

HOMER T. DICK, J. K. MARTIN, EDWARD C. CRAIG and DONALD B. CRAIG, for plaintiff in error.

C. R. PATTERSON and E. J. MILLER, for defendant in error.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

This is a writ of error to review a judgment for $382.32 against plaintiff in error in an action in case for the loss of hogs belonging to defendant in error, consigned to Raffety Commission Company at East St. Louis, Illinois, and shipped over the road of plaintiff in error from Sullivan, Illinois, as far as Madison Station, Illinois, and there turned over to another carrier to be transported to the final destination. The basis of the claim of defendant in error of his right to recover is the charge that plaintiff in error failed to transport the hogs within a reasonable time after the same were delivered to the road for shipment, and failed to water or drench the same or to take proper care of the same

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

from the time they were received at Sullivan for shipment on June 23, 1914, until they were delivered to the consignee at East St. Louis on June 24, 1914. The declaration fairly presents defendant in error's theory of the case. Plaintiff in error filed the general issue and four special pleas. A demurrer to the special pleas was sustained on the ground that they amounted to no more than the general issue. The case was tried on the issues made by the declaration and remaining plea. So far as we can see, plaintiff in error lost no right or advantage because the demurrer to the special pleas was sustained. We will, therefore, not consider whether the demurrer was properly sustained or not.

The following facts are not seriously controverted and are established by a preponderance of the evidence, namely:

The hogs were loaded about twelve o'clock noon on June 23, 1914, into cars previously ordered by defendant in error. These cars after being loaded were picked up about one o'clock p. m., or a very few minutes before, and placed in the train that was to take them to Madison Station, and at one o'clock and eight minutes the train left Sullivan. These two carloads of hogs were shipped in the name of one Ray N. Bupp, but Wychoff, the agent of plaintiff in error at Sullivan, Illinois, knew the hogs belonged to defendant in error. The hogs arrived at the freight terminal of plaintiff in error at about eight o'clock the same day, the schedule time, in good shape. They had been drenched by the train crew at Hall at one o'clock and thirty minutes p. m. and at Hillsboro at four o'clock and thirty minutes p. m. The cars containing these hogs were picked up at the terminal yards of plaintiff in error and delivered to the Merchants Bridge Terminal Company at about twelve o'clock and thirty minutes a. m. June 24, 1914. After the hogs were delivered to the Merchants Bridge Terminal Company, they were inspected and found to be in good condition and were again drenched.

At five o'clock and ten minutes on the morning of June 24, 1914, after they reached their destination, some twenty-nine of the hogs were dead, two died later, and one was crippled.

After the hogs were loaded into cars and but a few minutes before the train started from Sullivan, Ray N. Bupp went to the depot of plaintiff in error at Sullivan, where the agent presented to him a bill of lading or shipping contract which he signed in his own name. The evidence tends to prove that Bupp did not read this contract or know the contents of it and that no one read it to him or told him its contents, but it is not denied that it was delivered to him and that he accepted it and that there was no other bill of lading or shipping contract covering this shipment of hogs.

Defendant in error testified, in substance, that he did not know what was in the shipping contract, had never read it or been told the contents of it; that some two or three years before the time in question he had had a talk with Wychoff, the agent of plaintiff in error at Sullivan, in which Wychoff said they had a new rule; that he, defendant in error, did not know whether it was a new rule of the railroad or a new law, and that he did not know that by signing one of these contracts the shipper got a better freight rate.

While Bupp, who signed the shipping contract in his own name, was not the owner or consignor of the hogs, we think the weight of the evidence clearly discloses that what he did was done not only with the knowledge and consent of defendant in error, who was the owner, but for him and pursuant to his express directions.

Section 10 of the Uniform Bill of Lading Act (J. & A. ¶ 2175) is as follows:

"Except as otherwise provided in this act, where a consignor receives a bill and makes no objection as hereinafter provided to its terms or conditions, neither the consignor or any person who accepts delivery of

the goods, or any person who seeks to enforce any provision of the bill, shall be allowed to deny that he is bound by such terms and conditions, so far as they are not contrary to law or public policy:

"*Provided,* that any objection to the lawful terms and conditions of said bill shall be made in writing, which only need state the mere fact of such objection, by the consignor within three hours after receiving said bill and all such bills shall have attached to the same a blank form for such objection. Thereupon it shall be the duty of the officer, agent or servant of the carrier to take up said bill of lading so objected to, and upon request of such officer, agent or servant, it shall be the duty of the consignor to surrender such bill of lading and thereupon such officer, agent or servant shall issue an unconditional bill under which consignor shall pay the lawful freight rate."

Neither defendant in error nor Bupp, his agent, made any objection to any of the terms or conditions of the shipping contract, and no demand or request was made by either of them for an unconditional bill of lading. It follows, that by the terms of the act quoted, defendant in error is not allowed to deny that he is bound by the terms and conditions of the shipping contract, whether he or his agent actually knew what was in it or not, "so far as they are not contrary to law or public policy."

The shipping contract contains the following stipulations:

"1. The Receivers shall transport the following cars of live stock, and the parties in charge thereof, viz., 2 cars, said to contain one hundred fifty-five head of hogs, consigned to Raffety Comm. Co., consignee, from Sullivan, Ill., station, to Madison, Ill., station, on the line of railroad operated by the Receivers; and if the destination is beyond the line of the Receivers, shall deliver the same at said station to the carrier whose line may form a part of the route to East St. Louis, the place of destination; at the reduced rate of 12½ per

one hundred pounds, or .............., which is less than the rate for shipments at carrier's risk.

\*        \*        \*        \*        \*        \*        \*        \*        \*

"9.    If the destination of the live stock be upon the line of the Receivers, they shall be delivered to the consignee at destination upon surrender of this contract and the payment of charges; but if the destination be beyond the line of the Receivers, then the delivery by the Receivers shall be complete when made to the next succeeding carrier in the route.

"Any carrier in the route may make a separate contract for the transportation of the live stock over its line, but if it does not, then this contract shall be deemed to be adopted severally by such carrier and the shipper, and shall apply in all its terms, severally and not jointly, to the transportation over the line of such carrier, and such carrier shall have the benefit of all the provisions and limitations hereof. Neither the Receivers, nor any other carrier in the route, shall have any obligation or liability beyond the amount of loss and damage, if any, occurring while upon its own line."

By the express terms of this contract the liability of the carrier is limited to the time the hogs were on the line of such carrier.

Such limitations are not contrary to law or the public policy of the State, and have been enforced in this State for years where there was proof that they were assented to by the shipper. *Illinois Match Co. v. Chicago, R. I. & P. Ry. Co.*, 250 Ill. 396; *Illinois Cent. R. Co. v. Carter*, 165 Ill. 570; *Chicago & N. W. Ry. Co. v. Simon*, 160 Ill. 652.

The Uniform Bill of Lading Act has not changed the rule as to the effect of such limitation of liability stipulations, but has changed the rule in regard to the proof of the making of the contract, or, in other words, of the assent of the shipper to the limitation stipulations. Formerly the carrier was bound to prove the shipper's knowledge of such stipulations limiting liability, and his assent thereto. *Wabash R. Co. v. Thomas*, 122 Ill.

App. 569; *Chicago & N. W. Ry. Co. v. Calumet Stock Farm,* 194 Ill. 9; *Cleveland, C., C. & St. L. Ry. Co. v. Patton,* 203 Ill. 376. Now under the act referred to, when it is established that the shipper has received a bill of lading containing such stipulations and makes no objections thereto and particularly when he has signed the same, he is conclusively presumed to have known and assented to the same and is not allowed to deny that he is bound thereby. The judgment will therefore be reversed with a finding of fact to be incorporated in the record of this court.

*Reversed with finding of fact.*

Finding of fact. We find as ultimate facts that Bupp, who signed the shipping contract, was the authorized agent of defendant in error; that acting for defendant in error within the limits of his authority he signed and accepted the bill of lading issued for transportation of the hogs in question and made no objections thereto, and that the said hogs were turned over by plaintiff in error to a connecting carrier undamaged and in good condition.