## Harry Kingsbury, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. CARRIERS, § 226*—*when liable for loss of mare with foal.* The rule that a carrier is not an insurer of animals against injury caused by their nature or lack of vitality will not defeat a verdict for the loss of a mare, heavy with foal, where the evidence shows that she was accustomed to shipment and in good condition.

2. CARRIERS, § 248*—*when evidence sustains verdict for loss of mare.* A verdict and judgment for the loss of a mare is sufficiently supported by evidence of more than 15 hours' delay in a short haul, that she was not securely fastened in the car, that she was not

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

given food or drink, was not sent by a direct route, and that the consignee was not notified, and she was not unloaded, for 5 hours after her arrival.

3. CARRIERS, § 239*—*what is effect of section 10 of Uniform Bills of Lading Act on limitations on liability.* Section 10 of the Uniform Bills of Lading Act (J. & A. ¶ 2175), providing that no parties shall be allowed to deny that they are bound by the terms and conditions of a bill of lading received by the consignor, does not change the rule as to the effect of limitations on liability, but merely shifts the burden of proof.

4. CARRIERS, § 239*—*when undervaluation in bill of lading no bar to full recovery of loss.* A valuation of $150 in a bill of lading will not defeat a verdict and judgment for $800 for the loss of a mare through negligence of the railroad carrier.

5. CARRIERS, § 239*—*when instruction on limitation of liability not prejudicial.* In an action for the loss of a mare through several hours' delay in a short haul, and failure to unload or notify the consignee for 5 hours after her arrival, it is not prejudicial to instruct that a limitation of liability in the bill of lading is no defense, if the jury believe the loss was caused by wanton or gross negligence.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed April 12, 1919.

C. E. POPE and H. F. DRIEMEYER, for appellant; SILAS H. STRAWN, of counsel.

D. H. MUDGE, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

On May 16, 1918, at about 3:30 p. m., appellee delivered to the agent of appellant at East St. Louis, Illinois, a mare for shipment over its railroad to W. T. Dethridge, at Brighton, Illinois, a distance of about 38 miles. The mare was accustomed to shipment in cars and was in good condition, but was heavy with foal. She was loaded about 4:30 p. m. in a box or grain car,

and tied in one end of the same by ropes from her halter to cleats nailed on the sides of the car.

At that time appellant's train No. 80 left East St. Louis at 4:30 p. m. and train No. 98 left at 6:30 p. m., both on the main line running through Brighton, arriving at the latter place at 5:34 and 8:30 p. m., respectively. At 1:05 a. m., May 17, 1918, the car in which the mare had been loaded was started out of East St. Louis over the Roodhouse branch of appellant's railroad, arriving at Godfrey at about 5:20 a. m., where the train was delayed and the car transferred to appellant's branch railroad running east from Godfrey through Brighton, which place the mare reached about 8:30 a. m., May 17, 1918. The consignee made inquiry of appellant's agent at Brighton on the morning of May 17th concerning the mare, but she had not then arrived. He did not receive notice of the mare's arrival until about 1:30 p. m. of that day, when he at once proceeded to unload her. When the car was opened the ropes were broken, the mare was weak, wet with sweat and breathing hard. There is some dispute as to whether she showed bruises or evidence of violence. She was led about 200 feet from the car to the place where she died, about one-half hour after being unloaded. Appellant introduced in evidence the bill of lading signed by appellee, placing a valuation of $150 on the mare. The rate clerk by whom it was prepared had no recollection of the transaction. Appellee claimed he did not read the bill of lading and did not know its contents but he placed the value at $150 on the mare and knew he was securing a cheaper freight rate than he would secure at a higher valuation. Dethridge, a stockman, had many animals shipped to him, and they invariably came to Brighton over the main line, reaching there on No. 80 at about 5:34 p. m., or, on No. 98 at about 8:30 p. m. This mare, loaded at 4:30 p. m., arrived at 8:30 the next morning and remained in the car until 1:30 p. m., or about 21 hours.

Appellee brought suit in the Circuit Court of Madison county to recover $1,500, alleged to be the value of the mare. The first count of the declaration charged negligence in transporting the mare, delay, keeping from her food and drink, and injury resulting in her death. The additional count contains the same averments and alleges wilful and wanton negligence. The case was tried before a jury and a verdict rendered in favor of appellee in the sum of $800. A new trial was denied, judgment rendered on the verdict and an appeal prosecuted to this court. It is insisted by appellant there is no evidence tending to prove that the injury to and death of the mare resulted directly or indirectly from negligence of the carrier. Appellant is a common carrier, and the rule is that as such it is an insurer against everything but the acts of God and the enemies of the country. *Merchants' Despatch Transp. Co. v. Kahn,* 76 Ill. 520; *Illinois Cent. R. Co. v. McClellan,* 54 Ill. 58; *St. Louis, A. & T. H. R. Co. v. Montgomery,* 39 Ill. 335. Appellant cites numerous authorities to the effect that a common carrier is not an insurer of animals against injury or death caused by their nature which could not be guarded against by foresight and vigilance. Although the mare was heavy with foal, she was accustomed to being shipped in a car, and the evidence was such as to warrant a jury in finding that the facts did not bring the case within that rule of law. "It seems that the undertaking of a common carrier, in the absence of any special contract, is to transport the property to the place of destination by the most usual, safe, direct and expeditious route. Failing in any of these, unless prevented by inevitable accident, it must be held liable for loss." *Merchants' Despatch Transp. Co. v. Kahn, supra.* Appellant also cites authorities to the effect that a common carrier is not liable for failure to deliver stock in good condition if the loss is caused by its lack of vitality and not by any fault or negligence of, or violation of any duty by, the carrier.

The evidence tended to show the mare could have been taken from East St. Louis directly to her destination at either 4:30 or 6:30 p. m. and unloaded at 5:34 or 8:30 p. m. the same day; that she was not securely fastened in the car because the ropes were broken; that she was not given drink or food; that she was sent indirectly, and that notwithstanding her delay in reaching her destination, she could have been unloaded 5 hours sooner than she was. If the jury so found the facts, they would have also been justified in finding that the same constituted a violation of duty on the part of appellant and caused the death of the mare, and that her death was not caused by her nature or lack of vitality. It is the province of the jury to determine what acts do and what do not constitute negligence, and where they have found that the acts proven constitute negligence, a court of appeal will be slow to reverse such decision, unless so manifestly against the law and the evidence as to require a reversal on that account. *Moyers v. Illinois Cent. R. Co.*, 197 Ill. App. 179. Appellant further insists that, because appellee failed to object to the terms of the bill of lading, the amount of his recovery is limited to $150, the valuation therein placed on the mare. Section 10 of the Uniform Bills of Lading Act (J. & A. ¶ 2175) provides: ''Except as otherwise provided in this Act, where a consignor receives a bill and makes no objection as hereinafter provided to its terms or conditions, neither the consignor nor any person who accepts delivery of the goods, or any person who seeks to enforce any provision of the bill, shall be allowed to deny that he is bound by such terms and conditions, so far as they are not contrary to law or public policy.'' The Appellate Court for the Third District, in *Bean v. Jackson*, 207 Ill. App. 577, used this language in reference to the section of the law above quoted: ''The Uniform Bill of Lading Act has not changed the rule as to the effect of such limitation of liability stipula-

tions, but has changed the rule in regard to the proof of the making of the contract, or, in other words, of the assent of the shipper to the limitation stipulations. Formerly the carrier was bound to prove the shipper's knowledge of such stipulations limiting liability, and his assent thereto. (*Wabash R. Co. v. Thomas*, 122 Ill. App. 569; *Chicago & N. W. Ry. Co. v. Calumet Stock Farm*, 194 Ill. 9; *Cleveland, C., C. & St. L. Ry. Co. v. Patton*, 203 Ill. 376.) Now under the act referred to, when it is established that the shipper has received a bill of lading containing such stipulations and makes no objections thereto and particularly when he has signed the same, he is conclusively presumed to have known and assented to the same and is not allowed to deny that he is bound thereby.''

In *Chicago & N. W. Ry. Co. v. Calumet Stock Farm*, 194 Ill. 9, three horses were shipped under a contract limiting the carrier's liability to $100 on each horse, yeu a judgment for $1,500 was affirmed, and the Supreme Court in its opinion laid down the following rule: ''A common carrier cannot, even by express contract, exempt itself from liability resulting from the gross negligence or wilful misconduct committed by itself or its servants or employees. Whatever may be the rule elsewhere, in this State the common carrier cannot contract for exemption from responsibility for a failure on its part, or that of its servants, to exercise ordinary care in the transaction of its business. If the carrier may by contract limit its liability for gross negligence or wilful misfeasance to any extent, it may contract for total exemption. A contract for exemption from liability for its torts being void, as against public policy, it cannot shield itself as to any portion of the damages to person or property occasioned by its gross negligence or wilful misconduct. As we have seen, it may protect itself against fraud by requiring the consignee to state the value of the thing shipped; but when it receives property for transporta-

tion it must exercise reasonable care until it reaches its place of destination, and will not be permitted to absolve itself from that responsibility."

In *Moyers v. Illinois Cent. R. Co.,* 197 Ill. App. 179, where a jack died from injuries received in shipment, the shipper had placed a value of $100 on the animal and an attempt was made to limit the carrier's liability to that sum. The declaration charged general negligence, and this court in affirming a judgment for $300 said: "It was the duty of appellant to safely deliver such property at the place to which it was consigned, and it had no power to limit its liability in this respect but was bound by statute so to do." To construe the bill of lading in this case as appellant contends it should be under the Uniform Bills of Lading Act, would give it the effect of permitting appellant, a common carrier, to contract against its own negligence, and that of its agents and employees, which would be in conflict with the authorities cited and contrary to public policy and the settled law of this State. Said act has not changed the law upon this question but has simply changed the rule in regard to the proof of the making of the contract. *Bean v. Jackson, supra.* We think the law of this State on this point remains as stated in 10 Corpus Juris, 171: "When loss or damage results from a violation of the contract of shipment, growing out of the negligence of the carrier or its servants, any limitation as to the amount recoverable for loss or injury contained in the contract of shipment is inoperative although a reduced rate of freight is charged. The decisions formulating this rule very generally hold that contracts of this nature are in direct contravention of the common-law doctrine which forbids a common carrier to contract for exemption against the consequences of its own negligence or that of its servants."

Appellant claims there was error in giving the second instruction offered by appellee, which instructs the jury that if they believe that the mare was injured

as a result of the wanton or gross negligence of defendant as charged in the additional count of the declaration, the limitation in the bill of lading would not constitute any defense, for the reason that there was absolutely no evidence in the case proving appellant guilty in any manner of wanton, wilful or gross negligence, or tending to prove any negligence. Without discussing the facts further it is apparent from what we have said that in the view we take of the facts in this case there was evidence from which the jury could properly conclude that appellant was guilty of negligence or even wanton, wilful or gross negligence, and therefore there was no error in giving said instruction.

For the reasons given, the judgment of the Circuit Court will be affirmed.

*Affirmed.*