## Toledo, St. Louis & Western Railroad Company v. R. F. Boaz.

1. BILL OF LADING—*when limitations of liability contained in, will not defeat recovery.* Limitations of liability contained in a bill of lading will not defeat recovery where it does not appear that the terms of such bill of lading were assented to by the shipper.

2. MEASURE OF DAMAGES—*when failure to observe correct, not ground for reversal.* The failure of a trial judge closely to adhere to the correct measure of damages in the trial of a cause will not reverse a judgment fairly sustained by the evidence where technical accuracy was not insisted upon at the trial by the complaining party.

Action for damages. Appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

CHARLES A. SCHMETTAU, H. M. STEELY and GUENTHER & CLARK, for appellant; CLARENCE BROWN, of counsel.

BUCKINGHAM & TROUP, R. W. FISK and WALTER V. DYSERT, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

R. F. Boaz brought suit in the Circuit Court of Vermilion county against the Toledo, St. Louis & Western Railroad Company, to recover damages, which, it is alleged, he sustained by reason of the failure of the railroad company to transport with care and within a reasonable time, a carload of horses, from Ridge Farm, Illinois, to Norwich, Connecticut. Upon trial in the court a jury returned a verdict in favor of Boaz in the sum of $600. Judgment was rendered on the verdict and the railroad company appealed.

It appears from the evidence that the horses were received by appellant at Ridge Farm, Illinois, and loaded in a car, about eleven o'clock on the night of February 22, 1904, consigned to E. R. Pierson at Norwich, Connecticut; that they were not delivered at Norwich, Connecticut, until the early morning of February 29th; that such horses were thus in transit about six days, during which time they were taken from the car at Ohio City for twelve hours; that some of the horses became sick while on the way and shortly after their arrival at Norwich, three of them died.

That the time consumed in the transportation was unreasonable and that the delay was the cause of the death of three of the horses, are propositions which seem to have been fairly and fully established by the evidence.

Appellant claims exemption from liability upon the ground that the contract of consignment, which appellee signed at the time the horses were shipped, contained provisions in substance to the effect that in no event could the company be held for over $100 for the loss of any one horse, and that no claim for damages should accrue to the shipper unless a statement of loss

was made in writing and delivered at the head office of the company at Toledo, Ohio, within five days from the time the stock was removed from the car, and that appellee failed to comply with the terms of said contract in the presentation of any claim whatever of his said loss.

The evidence shows, however, that appellee loaded his horses late at night, and immediately upon receipt of the contract from the agent of appellant, delivered the same to one Hudson, who was to accompany the horses to their destination, and for whom the contract provided individual transportation; that appellee never read the contract and knew nothing whatever of its contents. Such a contract cannot by its terms be allowed to defeat a recovery, where the company would otherwise be liable, unless the carrier can show that the shipper assented to its terms. C. & N. W. Ry. Co. v. The Calumet Stock Farm, 194 Ill. 9; C., C., C. & St. L. Ry. Co. v. Patton, 203 Ill. 376.

The reason for this holding is obvious. A shipper who delivers his goods to the carrier for transportation and pays the carrier's charges therefor has a full right to expect that the carrier will discharge his common law obligations in that regard and transport the goods within a reasonable time after their receipt by him. If the carrier wishes to make that, which is universally regarded as a mere bill of lading, a contract containing terms which have for their purpose the relieving of the carrier of its duty otherwise plain, it is then incumbent upon it to show that the shipper knew of and assented to such terms and conditions. In this respect appellant failed utterly, and by reason of such failure the provisions of said contract relied upon do not defeat the common law liability of the carrier.

There is no force in appellant's argument that the paper executed in the present case can be called a *contract* as distinguished from a bill of lading. Appellee was entitled to a bill of lading in some form, and re-

ceived no other paper than the one in question that could answer that purpose.

Appellant next contends that its liability ended when it delivered the car of horses to the "Erie" road, its connecting carrier, at Ohio City. But to this proposition we cannot give our assent. The evidence shows that appellee had frequently made shipments of horses over appellant's road to the same consignee at Norwich, Connecticut, prior to making the shipment in question. The bill of lading shows that the transportation contemplated was from Ridge Farm to Norwich, Connecticut, while the evidence shows that appellant assumed the duty of selecting its connecting carrier at the point where the car left its own line in transit to Norwich. The same question was before this court recently in the case of the Wabash Railroad Company v. Thomas, 122 Ill. App. 569, where it was held that in view of the fact that the carrier did not consult the shipper as to the choice of connecting carriers, or notify him that he would be expected to receive the goods at the point of connection, but continued to exercise authority over the shipment, the contract would be construed as a contract of carriage from point of shipment to destination.

Appellant further contends that the trial court committed error in the admission of the testimony as to the value of the horses that died and as to the expenses incurred by appellee in procuring medicine for them and paying for the services of a veterinary surgeon to treat them, and insists that in consequence of the admission of such evidence the jury did not fix the amount of appellee's recovery by the correct rule or measure of damages; but we do not think that appellant is in a position to successfully urge this objection, for the reason that as to a large part of that evidence appellant saved no exception to the ruling of the court, and in some instances did not even object. The record shows that on the examination of Mr. Pierson when he

fixed the value of the horses that died at $560, while objection was made to the question, no exception was saved to the action of the court in allowing the question answered. The record also shows that Mr. Boaz testified in substance to the same valuation, also to the costs of medicine and amount of the bill of the veterinary surgeon, without objection by appellant.

It may be true, as contended by appellant, that the correct rule as to the measure of damages was not strictly adhered to on the trial of the case; yet there was ample evidence given as to the damages sustained by appellee, and if appellant had cared to insist upon having the damages determined by the exact rule governing a recovery in such cases, he should have objected to proof of damages by any other method, and have made his objection good by saving an exception to the action of the court.

Appellant also contends that the trial court committed error in the giving, modifying and refusing of instructions, but we do not need to review such assignment of error as it relates principally to the legal effect of the exemption from liability claimed by appellant under said contract of consignment, which we have already discussed.

Substantial justice was done by the jury in the verdict rendered, and there being no reversible error in the record the judgment is affirmed.

*Affirmed.*