### Levy & Hipple Motor Company, Appellee, v. City Motor Cab Company, Appellant.

#### Gen. No. 16,438.

1. CONTRACTS—*what is preventing of performance.* Where one party to a contract deliberately makes performance impossible by some act prior to the time for performance, such act is a prevention of performance.

2. CONTRACTS—*performance.* If one party to a contract shows that the other prevented performance, it is to be taken as *prima facie* true that he would have accomplished it if not so prevented.

3. CONTRACTS—*implied obligation not to prevent performance.* If one party contracts that another shall do a certain thing, he impliedly obligates himself to do nothing to hinder performance by the other.

4. SALES—*duty of seller when buyer hinders or prevents performance.* Where a contract is made for the sale of specific

automobile bodies but the buyer purchases them from the maker before the time for delivery, the seller is not required to ascertain whether such bodies can be bought elsewhere, or to buy them if any are found, simply to tender when acceptance would probably be refused and the buyer by his own act has prevented delivery.

5. SALES—*evidence that goods were satisfactory.* Where a contract is made for the sale of specific goods but the buyer purchases from the maker, before time for the seller to deliver, the purchase is sufficient evidence that the goods were satisfactory.

6. SALES—*when buyer who prevents seller from performing cannot claim that seller had no contract with maker of goods.* If a contract is made for the sale of specific goods and the buyer purchases from the maker thereof, before time for delivery by the seller, but refuses to pay damages caused by the breach, the buyer is in no position to claim that the seller should not recover because he shows no binding contract with the maker to deliver to him, especially where such buyer threatened to sue the maker to prevent breach of the contract to deliver to the buyer.

7. DAMAGES—*when defendant cannot object to award.* A buyer cannot object to the damages awarded on action for breach of contract for the sale of goods because of the incompetency of evidence as to the measure thereof, where counsel for the seller stated and assumed by his questions that a certain town was the nearest market at which the goods could be bought and it was proved that the market price and cost price to the seller were the same but no objection was made that the proof failed to show the market price at the proper date.

Appeal from the Municipal Court of Chicago; the HON. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed October 16, 1912.

PADDOCK, FURNESS, CLARKSON & RUTTER, for appellant.

GARNETT & GARNETT, for appellee.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

Levy & Hipple Motor Company, appellee, sued the City Motor Cab Company, appellant, on an agreement of appellant to purchase of appellee six certain taxicab bodies at $400 each, and four Chalmers' Detroit automobile chassis at $1,400 each. The declaration

22    Appellate Courts of Illinois.

Levy & Hipple Motor Co. v. City Motor Cab Co., 174 Ill. App. 20.

averred that appellee informed appellant that the bodies were in Detriot, Mich., in the possession of the C. R. Wilson Body Company and that appellant, after learning from appellee where the bodies were, bought them of said body company for $310 each, in violation of appellant's agreement to buy them of appellee; that plaintiff was ready, willing and able to deliver the chassis and tendered them to appellant, but that appellant refused to accept them, and that appellee would have secured the bodies from the said body company and would have delivered them to appellant had not appellant prevented appellee from performing by wrongfully purchasing them of said body company. Appellant pleaded the general issue.

The facts material to the issues are that appellee had the exclusive agency in Chicago for the Chalmers' automobiles, commonly known by the name of "Chalmers' Detroit." June 16 and 19, 1909, appellee received letters from said body company offering to sell to it for $310 each six taxicab bodies made to fit the Chalmers' Detroit 30-horse power, 1909 model chassis. The bodies had been built on an order for a third party, and that order was cancelled when the job was near completion. The letters stated that delivery of the first body could be made in about three weeks and the other five during the fourth week following. The bodies were not then painted, but were to be completely trimmed and painted. Appellee had sold and delivered to appellant, June 17, 1909, two Chalmers' Detroit chassis, model of 1909, 30-horse power, for $1400 each; and appellant had two bodies which it expected to put on those two chassis, but could not do so because they did not fit. Appellant had been hunting for bodies that would fit its chassis, and, June 19, 1909, called on appellee and was shown a photograph of the said six bodies and was offered them for purchase at $400 each f. o. b. Chicago, and four more Chalmers' Detriot chassis in appellee's possession for immediate delivery at an understood price of $1,400

each. Appellant then agreed to take the six bodies and four more chassis, provided the bodies were satisfactory, after being informed that it would require four or five weeks to finish and paint them. Towne, president of appellant, preferred to see the bodies at once, and being told they were in Detroit, after obtaining a letter of introduction from appellee to the C. R. Wilson Body Company, he and Borden, another officer of appellant, on June 21, 1909, went to Detroit to examine the bodies. Appellee sent a wire to the body company ahead of Towne and Borden, as follows: "Will send customer to Detroit to see taxi bodies; quote four hundred dollars. Will take all if acceptable to customer." The letter of introduction read as follows: "This letter introduces the bearer, John Borden, who is interested in six Chalmers' Detroit Taxicab Company bodies for the Chalmers' Detroit 30. These, we understand, you can forward immediately, and if acceptable to Mr. Borden he will advise you as to colors. We will also confirm to you." On seeing the bodies Towne and Borden for appellant, without presenting the letter of introduction, bought the said bodies of the body company direct for $310 each, and afterwards refused to take the four chassis of appellee when tendered by it.

The cause was tried by the court and a jury, and judgment was rendered for the entire amount claimed by appellee, $1,622.76.

The judgment of the court is here challenged upon the ground that the evidence does not show that the parties made any such contract as is disclosed by the foregoing statement of facts. We think the lower court and the jury were warranted in finding that the foregoing facts were sustained by the evidence. That is to say, that such a finding as was evidently made is not against the manifest weight of the evidence. It is true that the two main witnesses for appellant, Borden and Towne, denied that any contract at all was made for the purchase of either the bodies or the

chassis by appellant. Mr. Levy for appellee testified to the foregoing statement of facts, in substance, and is corroborated by the testimony of Mr. Herrick. The testimony of these two witnesses for appellee is somewhat corroborated by the circumstances in evidence, that appellant had bought two chassis of appellee for bodies owned by it that did not fit the chassis; that appellant was in the market for bodies and had not up to their alleged contract been able to find any for sale; that the bodies in question did fit the two chassis bought and the four chassis in question and were in the hands. of the body company to whom the letter of introduction by Levy, officer of appellee, was directed; that appellee was the exclusive agent in Chicago for the Chalmers' Detroit machines and which the bodies in question were made to fit; and the further fact that Borden and Towne, after they came from Detroit, told the witness, McDonald, that they had bought the bodies direct and that they "had saved some money by buying them outside of Mr. Levy." Borden and Towne denied using the letter of introduction and stated that they destroyed it. They nevertheless went straight to C. R. Wilson Body Company and bought the six bodies in question at the very price they were quoted by the body company to appellee, and tried to buy more, but could find no more such bodies. This letter and the destruction of it has considerable bearing in the case, for had it been presented to the body company it would have clearly disclosed that appellee was intending to buy them for appellant and might have had the effect to defeat the sale direct to appellant. As the case was one for the jury to finally and irrevocably settle under proper instructions, the judgment must stand for $1,200 less freight on the four chassis, as the market price and the price paid by appellee for the chassis was $1,100 each at Detroit, the nearest and only market.

The main contention of appellant is as to the six bodies purchased by it. It seriously and forcibly ar-

gues that appellee failed to prove "that at the appointed time it was ready, able and willing to both sell and deliver the goods as agreed, or that it was prevented from doing so by some act of appellant which in law constitutes 'prevention.' " We fully agree with the statement that one or the other of those propositions must be shown to have been proved legally before appellee can recover. We are clearly of the opinion, however, that the evidence establishes the latter of said two propositions. Where one party to a contract shows that the other party has deliberately made it impossible for the contract to be performed by some act of his done prior to the time that performance was to be made or had, such act in law amounts to a prevention of performance. It is also the law that where one contracting party can show that the other prevented his performance of the contract, it is to be taken as *prima facie* true that he would have accomplished it if he had not been so prevented. McCreery v. Green, 38 Mich. 172; Kersey v. Garton, 77 Mo. 645; United States v. Peck, 102 U. S. 64; Marvin v. Rogers, 53 Tex. Civ. App. 423; Norcross v. Wills, 130 App. Div. (N. Y.) 470; Lake Shore & M. S. R. Co. v. Richards, 152 Ill. 59; Calkins v. Williams, 36 Ill. App. 500; Pate v. March, 65 Ill. App. 482; Monroe v. Snow, 131 Ill. 126; Moses v. Bierling, 31 N. Y. 461.

From the foregoing authorities may be deduced the rule that when one party stipulates that another shall do a certain thing he thereby impliedly obligates himself to do nothing which may hinder or obstruct that other in doing the thing agreed. The evidence clearly shows that the bodies bought of the body company by appellant were the identical bodies it had agreed to buy of appellee, and were all of that kind of bodies that could be bought in Detroit. Appellee was not required to ascertain if such bodies could be bought elsewhere, or to buy them elsewhere if it could find them, simply to be able to make a tender to one to whom acceptance would in all probability be re-

fused, and for the simple reason that it contracted to deliver those certain and specific bodies to appellant and no others, and appellant by its own act prevented such a delivery by buying direct before appellee was required to deliver them. Appellant's purchase is in itself sufficient evidence that the bodies were satisfactory for its intended use of them.

Appellant relies on the case of Ashley v. Dixon, 48 N. Y. (3 Sickels) 430, as an authority that is in every way on all fours with the case at bar, and that it is contrary to the law of the cases above decided, and controlling in this case. We do not so understand that case. The law laid down in that case is, in substance, this: "If A. has agreed to sell property to B., C. may at any time before the title has passed, induce A. to sell it to him instead, and if not guilty of fraud or misrepresentation, he does not incur any liability, and this is so, although C. may have contracted to purchase the property of B.," *if C. buys it after B. had failed to deliver to C. upon tender and demand made by C. at the time B. was to deliver it to C.*

The words in italics are added by ourselves, but they are in harmony with the facts in that case. The substance of the holding in that case, as we understand it, is that if A. still has the property when B. tenders the price and refuses to deliver it to B., it must be regarded solely as A.'s breach of contract, if C. has done no more than use simple persuasion without fraud to induce A. not to perform his contract with B.; and, if by reason of such refusal of A. to perform with B., B. is unable to perform with C. at the agreed time and at which time C. tenders the price and demands delivery to him by B., C. may at any time thereafter buy the property direct of A. without liability to B.

The reason for the holding is evident. There was no showing, and perhaps none could be made, that A. would have delivered the property to B., if no persuasion of C. had been made. A. at the time he refused to deliver to B. had the property and was able to de-

liver, but not willing to do so. B. was not able to deliver to C. on his demand because A. had not and would not deliver to B. The action against C. by B. was an action for fraud and misrepresentation, and the proof failed to sustain the declaration, and the holding of the N. Y. court was for that reason clearly right. The case is clearly distinguishable from the one now before us, because in the latter case appellant made it impossible for appellee to perform its contract by purchasing the bodies direct from the body company before the time they were to be delivered by appellee to appellant and refused to make good to appellee its damages by reason of such breach. We do not think that appellant is in a position to claim that appellee should not recover, because appellee failed to show a binding contract with it by the body company to deliver it the bodies, and particularly so in view of the fact that as shown by a letter of appellant ·to the body company, appellant by threatening suit prevented the body company from cancelling its contract with appellant and delivering the bodies to appellee after the contract of sale by the body company to appellant and before delivery thereof to appellant. All the evidence tends to show that appellee would have secured the bodies and have been able to perform its contract with appellant if appellant had not interfered by purchasing direct of the body company.

There is no merit in appellant's contention that the contract was void because in restraint of trade. Appellant by failing to make proper objections at the time of the introduction of the evidence bearing on the measure of damages is not in a position to question the damages awarded, because of the alleged incompetency of such evidence. Counsel for appellee stated and assumed by its question that Detroit was the nearest market in which the goods could be bought, and proved that the market price was the same as the cost price to appellee of the chassis. No objection

was made that the proof failed to show the market price at the proper date. If it had desired to insist upon having damages determined by the exact rule governing in such cases, it should have objected to proof of damages by another method. Toledo St. L. & W. R. Co. v. Boaz, 130 Ill. App. 17. We are satisfied, however, that the correct measure of damges was adhered to in this case. Finding no reversible errors in this record, the judgment is affirmed.

*Judgment affirmed.*