614

In re Estate of Max Tauber, Deceased.  Foreman-State Trust & Savings Bank, Administrator of the Estate of Frances Tauber, Deceased, Appellee, v. Joseph Tauber, Executor of the Estate of Max Tauber, Deceased, Appellant.

Gen. No. 35,055.

Opinion filed October 9, 1931.

SAMUEL J. SHAEFFER and GEORGE H. FOSTER, for appellant.

LEDERER, LIVINGSTON, KAHN & ADLER, for appellee; SIGMUND LIVINGSTON, HARRY H. KAHN and ARCHIE H. SIEGEL, of counsel.

MR. JUSTICE KERNER delivered the opinion of the court.

Appellee, administrator of the estate of Frances Tauber, deceased, filed a claim in the probate court of Cook county against the estate of Max Tauber, deceased, alleging that on February 7, 1924, before they were married to each other, Max Tauber and Frances Bleier entered into a written antenuptial contract, by the terms of which each released all manner of claim and right in the other's property, and in this contract Max Tauber agreed to "settle and assure the said Frances Bleier the sum of $20,000 in cash, to be paid to her by his executors within 60 days after his death, provided, however, that the said Frances Bleier shall survive the said Max Tauber"; that the parties were married and lived together as husband and wife until December 29, 1928; that on December 29, 1928, Max Tauber shot and killed Frances Tauber and then shot himself and as a result died December 30, 1928, that by said unlawful act Max Tauber wilfully and fraudulent-

ly intended to profit thereby in making it impossible for Frances Tauber to survive him and thereby he prevented Frances Tauber from surviving him; that the $20,000 mentioned in the antenuptial agreement had not been paid to Frances Tauber and that the estate of Max Tauber is indebted to the claimant in said amount. The claim was allowed in the probate court and an appeal taken to the circuit court of Cook county, where the cause was tried *de novo* without a jury, resulting in a finding in favor of claimant and assessing the damages at $20,000. Judgment was entered on the finding, from which judgment an appeal was taken to this court.

The material facts are that on February 7, 1924, Max Tauber and Frances Bleier entered into an antenuptial agreement which provided that each should relinquish all right of dower and homestead and claim to the estate of the other; that Frances Tauber irrevocably constituted Samuel J. Shaeffer and Max Tauber her attorneys in fact to execute in her place and stead and to sign her name to and properly acknowledge any deed, or any other indenture, releasing all right, title and interest in the real and personal property of Max Tauber, and that in consideration of the marriage of the parties, Max Tauber for himself and his executor agreed with Frances Bleier, in case the marriage shall be consummated, to settle and assure the said Frances Bleier the sum of $20,000 in cash, to be paid to her by his executor within 60 days or as soon as possible after the date of his death, provided, however, that the said Frances Bleier shall survive him. After the execution of this agreement they were married and lived together as husband and wife until December 29, 1928, when Max Tauber killed his wife; he then shot himself, but lived till the following day.

Appellant contends that as the action is based solely on the antenuptial agreement under which $20,000 is

to be paid to Frances Tauber if she survive Max Tauber, and as she did not survive him, there can be no recovery, and in arguing for a reversal counsel for appellant state that the contingency that Max Tauber might kill Frances Tauber was not anticipated nor provided for in the antenuptial agreement, and if she saw fit not to provide for such a contingency and was content with the agreement that she was to receive the money only in the event she survived him, an action based on the contract cannot be successful, and that the fact that Max Tauber made it impossible for Frances Tauber to survive him by killing her, cannot avail the claimant. Counsel cite no authority for this bold contention.

The judgment in this case must be affirmed because it has repeatedly been held that where one party to a contract shows that the other party has deliberately made it impossible for the contract to be performed by some act of his done prior to the time that performance was to be made, such act, in law, amounts to a prevention of performance (*Levy & Hipple Motor Co. v. City Motor Cab Co.,* 174 Ill. App. 20, and cases cited), and this rule applies to an antenuptial agreement. (*Collins v. Phillips,* 259 Ill. 405, 411; *Landes v. Landes,* 268 Ill. 11, 20.) Further illustrative of the principle applicable to the instant case is *Logan v. Whitley,* 114 N. Y. S. 255, where John Whitley and Elizabeth Logan entered into a contract in contemplation of marriage which provided that Elizabeth Logan should receive $10,000 in lieu of any claim to Whitley's estate in the event she should survive him. After their marriage, Whitley killed his wife and then committed suicide. Her personal representative filed suit to recover $10,000 from Whitley's estate. It was contended that the $10,000 was not to be paid except on the contingency that the wife survive the husband, and the court, on page 257, said:

"So far as the plaintiff's intestate was concerned, it had been wholly executed, and she had become entitled to the sum of $10,000 upon the contingency that she survived her husband. That claim was in the nature of a debt against his estate. *Matter of Baker's Estate,* 83 App. Div. 530, 82 N. Y. Supp. 390, affirmed 178 N. Y. 575, 70 N. E. 1094.

"A party to a contract cannot set up the failure of a condition caused by his own fault. *Gallagher v. Nichols,* 60 N. Y. 438; *Risley v. Smith,* 64 N. Y. 576. In this case, the happening of the contingency upon which the payment was to be made was prevented by the wrongful act of the promisor, and hence neither he nor those claiming under him can defeat an action on the promise by showing that the contingency did not happen."

It is also contended that there is no evidence that Frances Tauber would have survived Max Tauber had he not wilfully killed her. Suffice it to say that where a contracting party shows that the other prevented the performance of the contract, it is to be taken as prima facie true that he would have accomplished it if he had not been so prevented. (*Levy & Hipple Motor Co. v. City Motor Cab Co., supra.*) A prima facie case with nothing to rebut it is a case made out.

It is next claimed that Frances Tauber violated her agreement to execute and sign all documents and mortgages and she could not have recovered under the contract. This contention is based upon the fact that in the antenuptial agreement Frances Tauber agreed she would, upon the request of Max Tauber, join with him in the execution of any quitclaim deed, deed, mortgage, lease or other indenture, instrument or document, concerning the property of Max Tauber. Matt Kretzman testified that in December, 1928, he had a conversation with Max Tauber; after this conversation Max Tauber handed the witness a paper, the witness then pre-

sented this paper to Mrs. Tauber and said: "Mrs. Tauber, will you please sign this paper for Max Tauber? She said, No Kretzman, I won't sign anything for him or you." In his conversation with Mrs. Tauber he did not say it was a mortgage or trust deed. Three days later he called again, took the same paper out of his pocket, telling her it was a mortgage on a piece of property on the avenue, and asked her to please sign the paper and she answered she would not sign. Ben Newmark testified that in July, 1928, he called at the Tauber home and saw a paper there. Mr. Tauber asked Mrs. Tauber to sign the paper, telling her it was a contract or deed. Tauber said, "this paper is for the—regarding the land, the farm down in Crown Point, whereby the party next door wants to exchange ten feet of land on either side of the farm with me and demands your signature as well as mine." "She said —I won't sign anything." The point is not well taken, as there was no evidence that she refused to join with him in the execution of any deed concerning the property of Max Tauber. Furthermore, in the antenuptial agreement Frances Tauber waived all right of dower and homestead in his real property and appointed attorneys in fact to execute and sign in her behalf any deed or other indenture releasing all right, title and interest in the real and personal property of Max Tauber.

The last proposition of law contended for is that the claim is a contingent claim and the probate court did not have jurisdiction to allow it, and *Union Trust Co. v. Shoemaker,* 258 Ill. 564, and *Chicago Title & Trust Co. v. Corporation of Fine Arts Bldg.,* 288 Ill. 142, and other cases are cited. We have examined all the cases cited. These cases hold that the holder of a contingent claim is not a creditor of the estate and that a contingent claim cannot be allowed under ch. 3, par. 68, sec. 67, Cahill's Revised Stats. 1931, p. 62, but these

cases do not hold that an obligation which was contingent in character when it was incurred, may not be filed and allowed if the obligation has matured. If such a claim has become a matured obligation it must be filed in the probate court within a year from the time letters testamentary are issued, otherwise it is barred. When Max Tauber deliberately killed his wife he made it impossible for her to survive him, and thereby waived the condition of survivorship and the obligation to pay $20,000 became absolute, the claim a matured obligation, and the probate court had jurisdiction of the subject matter.

Appellant's counsel also argue that Frances Tauber had no claim against Max Tauber; that she was never a creditor of his estate and could not have maintained an action and consequently her personal representative cannot do so, in other words, that this was not such an action as survived. This point cannot be maintained. The claim in the instant case is upon a contract. Contract actions survive at common law (*Stow v. Robinson,* 24 Ill. 532, and ch. 3, par. 125, sec. 123, Cahill's Revised Stats. p. 71.)

The judgment being just and no error appearing it is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.