H. H. Mittenthal and I. M. Greenberg, Trading as Mittenthal Bros., Defendants in Error, v. Michigan Central Railroad Company, Plaintiff in Error.

Gen. No. 16,601.

1. CARRIERS—*limitation of liability.* A contract exempting the carrier from liability for damage by heat is reasonable and not

against public policy where such heat is not caused by the carrier's negligence.

2. CARRIERS—*when not negligence to fail to re-ice a car.* It is not negligence for a carrier to fail to re-ice a car of apples shipped fifth class from Battle Creek to Chicago, though injury thereto results from heat, where the bill of lading exempted the carrier from liability for injury caused by heat, the official classification properly filed and posted provided that consignors should furnish ice at their own cost for property classified less than third class, and plaintiff knew that the ice would not last and that re-icing would be at his cost but gave no order therefor.

3. CARRIERS—*when consignor should order car re-iced.* If the consignors of a car of apples wish the car re-iced or consider it necessary they should make a request therefor, where the contract of affreightment exempts the carrier from liability for damage by heat and the official classification properly filed and posted provides that consignors shall furnish ice at their own cost for property classified less than third class.

4. CARRIERS—*knowledge that damage would result if car not re-iced.* A carrier is not bound to know that apples in a car without ice would be damaged in shipment from Battle Creek to Chicago where loading was finished Wednesday and the car arrived in Chicago the next day.

Error to the Municipal Court of Chicago; the HON. FRANK CROWE, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed December 30, 1912.

WINSTON, PAYNE, STRAWN & SHAW, for plaintiff in error.

NICHOLAS J. PRITZKER, for defendants in error.

MR. JUSTICE BAKER delivered the opinion of the court.

The defendants in error brought an action of the fourth class in the municipal court to recover damages to a carload of apples shipped by plaintiffs over defendant's road from Battle Creek, Michigan, to Chicago June 17, 1908, recovered a judgment for one hundred and sixty-six dollars and the defendants sued out this writ of error. The apples had been in a cold storage warehouse in barrels since the preceding Octo-

ber.   Monday, June 15, 1908, plaintiffs began to re-
move them to a packing room, not refrigerated, for
the purpose of repacking, and the same day ordered a
car from defendant to carry the apples to Chicago.
The defendant put 4,000 pounds of ice in a standard
refrigerator car at Jackson and sent it empty to Bat-
tle Creek.   Tuesday morning this car was at Battle
Creek and plaintiff began loading.   The apples were
taken from the shipping room and loaded into the car
by one man with a one-horse wagon, the loading oc-
cupied all of Tuesday and part of Wednesday, and
during the loading the car door opened fourteen times,
ten minutes at a time.   The proper temperature in a
refrigerator car in summer is forty to forty-five de-
grees.   An employee of plaintiffs, who went to the car
with the first load of apples, testified that the temper-
ature in the car then was forty to forty-five degrees,
which shows that the car was then refrigerating prop-
erly.   This testimony was not contradicted and there
is no testimony as to the temperature of the car or
the amount, if any, of ice in its bunkers from that time
until Saturday, when there was no ice in the bunkers.
There was no delay in handling the car after it was
loaded.   It reached Chicago Thursday evening, was
set on the team track for delivery Friday morning,
and twenty-five barrels of apples were then taken from
it by the consignee.   The apples were found to be
"cooked," that is damaged by heat.   The car re-
mained on the team track until the next Wednesday.
It was re-iced on the order of plaintiffs Saturday,
Sunday and Tuesday.   The remainder of the apples
were taken out Wednesday and were then in substan-
tially the same condition that the apples taken out of
the car Friday were at that time and brought substan-
tially the same prices when sold by order of the plain-
tiffs.   We think that the evidence shows that substan-
tially all the damage to the apples was done before
Friday, when the first apples were taken from the car.

The shipment was an interstate shipment and the

official classification properly filed with the Interstate Commerce Commission and posted in the station at Battle Creek provided that apples in barrels in carload lots should be fifth-class freight, and that "Railroad Companies may furnish at their own cost ice and salt when required for the protection of property not classified lower than third class, either in less than carloads or carloads, when loaded in refrigerator or other cars; excepting that when cars are loaded by individual consignors the cost of icing will not in any instance be assumed by the carriers when the weight in each of such cars is less than 10,000 pounds. Consignors must furnish at their own cost ice and salt furnished for property classified less than third class, in less than carloads or carloads."

The freight tariff duly published and filed gave the rates from Battle Creek to Chicago, for third class 21½ cents per 100 pounds, and for fifth class 11½ cents. June 17 the plaintiffs signed a shipping order and received in return a bill of lading for the shipment of its car to Chicago, which was also signed by the plaintiffs. The shipping order and bill of lading have similar provisions, among which are the following:

"Received subject to the classification in effect on the date of the receipt by the carrier of the property described in this shipping order (original bill of lading). * * * That every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (see conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns as just and reasonable. * * * No carrier * * * shall be liable for any loss thereof or damage thereto, by causes beyond its control * * * or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet or decay. * * *

"If the shipper elects not to accept the said tariff rates and conditions, he should so notify the agent of the receiving carrier at the time his property is of-

fered for shipment, and if he does not give such notice it will be understood that he desires his property carried subject to the Uniform Bill of Lading conditions in order to secure the reduced class rates thereon. * * *''

A freight bill was made out at the rate of 11½ cents per 100 pounds and the freight paid by plaintiffs at that rate.

''The rate sheet, standing alone, does not constitute the schedule of rates required by the law, but is only a part of it; the other part being the official classification referred to in it, and filed with it; and the two must be read together, as component parts of the schedule of rates.''   Mannheim Ins. Co. v. Erie & W. Transp. Co., 72 Minn. 357.

''A carrier is required by law to publish the rate and also clearly to indicate the route over which the published rate is applicable.   When so published the rates named and the  route designated stand as  the law, binding as well upon the shipper as upon the carrier.   A schedule of rates published in the manner provided by law speaks with equal authority to the shipper and to the carrier, and both are equally chargeable with notice of the rate and of the route over which the rate is made applicable.''   Poor Grain Co. v. Ry. Co., 12 I. C. C. R. 469; Mannheim Ins. Co. v. Erie & W. Transp. Co., *supra*; Smith v. Great Northern R. Co., 15 N. Dak. 195.

The contract of affreightment exempted the defendant from liability for loss or damage to freight by heat.   Such exemption is reasonable and not against public policy where the heat was not caused by the negligence of the defendant.   The question then is presented whether the defendant was guilty of negligence in failing to re-ice the car.   If it be conceded that the defendant ordered a refrigerator car Monday, June 15, such a car with 4,000 pounds of ice in its bunkers was sent from Jackson to Battle Creek that day. The only testimony in the record as to the time which such a quantity of ice would last, was that it would last

about thirty-five hours if the car was empty and the doors kept shut, and a less time if the car was filled. It was forty-eight hours from the time the ice was put in the car to the time the loading was completed, and the shipping order given.

The official classification provided that the consignors should furnish at their own cost ice furnished for property classified less than third class. The apples were classified fifth class, and we think that if the plaintiffs wished to have the car re-iced before it left Battle Creek, or thought it necessary that it should be re-iced then, they should have notified the defendant and requested it to re-ice the car. Plaintiffs were at the place of shipment. They knew that the car was iced Monday and that if it was re-iced it would be at their cost. They had the right to order the car re-iced or let it go forward without re-icing, and they gave no order to have the car re-iced. We do not think that under the circumstances the defendant was bound to re-ice its car at Battle Creek or between Battle Creek and Chicago without a request to do so by the plaintiffs, and that its failure to so re-ice the car was not negligence.

Neither can we say that the defendant was bound to know that apples in a car without ice would be damaged in shipment for the distance between Battle Creek and Chicago and taking the time required to carry the apples in question to Chicago. In Beard v. Illiniois Cent. R. Co., 79 Iowa, 518, relied on by the defendant in error, butter was carried by the defendant in hot weather from DuQuoin, Illinois, to New Orleans in a box car, and it was held that the employees of defendant must be presumed to know that butter carried in ordinary cars to New Orleans in summer would be greatly injured by the ordinary heat of the climate. Here the distance was not great and there was no difference in climate.

Our conclusion from all the evidence is that it fails to show that the defendant was guilty of negligence

in respect to the apples in question, and therefore, under its contract of affreightment, was not liable for damage to such apples by heat.

The judgment of the municipal court will therefore be reversed.

*Judgment reversed.*