## Mutual Orange Distributors, Appellee, v. Atchison, Topeka and Santa Fe Railway Company, Appellant.

### Gen. No. 25,516.

1.  CARRIERS, § 52*—*when liability presents federal question.* In an action for damages to a carload of lemons which were allowed to freeze after arrival at their destination, where the evidence presented a question as to liability of the delivering carrier to furnish heat, a federal question was presented, as the question of responsibility under a bill of lading may be none the less a federal one although it must be resolved by application of general principles of the common law.

2.  CARRIERS, § 138*—*when exclusion of evidence that heater service was furnished under rule of Interstate Commerce Commission erroneous.* In an action for damages to a carload of lemons which froze after arrival at their destination, where the plaintiff was allowed to prove the existence of a custom prevailing at other cities whereby heater service was provided by carriers, the refusal to allow the defendant to prove that such service was performed under a rule of the Interstate Commerce Commission permitting a charge of $2 per car while such cars were on the tracks, was error.

3.  CARRIERS, § 138*—*when evidence that heater service was customarily performed by shippers and consignees improperly excluded.* In an action for damages to a carload of lemons which froze after arrival at their destination, where the plaintiff was allowed to prove the existence of a custom prevailing at other cities whereby heater service was provided by carriers, evidence of the defendant that such heater service was not provided at the destination in question and that the service was customarily performed by consignors and consignees, was erroneously excluded.

4.  CARRIERS, § 138*—*when evidence that heater service was furnished in other cities improperly admitted.* In an action for damages to a carload of lemons which were allowed to freeze after arrival at their destination, evidence of the plaintiff that heater service for cars containing perishable products was provided by carriers at other cities was erroneously admitted, especially where the defendant was not permitted to prove that such service was furnished under a rule of the Interstate Commerce Commission allowing an extra charge therefor.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the County Court of Cook county; the Hon. S. L. RATHJE, Judge, presiding. Heard in this court at the October term, 1919. Reversed and remanded. Opinion filed March 8, 1920.

HOMER W. DAVIS, JOHN R. ONG and SLOANE TURGEON, for appellant.

CHARLES A. BUTLER, for appellee.

MR. JUSTICE DEVER delivered the opinion of the court.

This is an appeal by defendant from a judgment of the county court entered in favor of the plaintiff for the sum of $254.37.

Plaintiff brough suit to enforce an alleged liability of defendant under the Carmack Amendment to the Interstate Commerce Act for damages to a carload shipment of lemons which had been shipped by plaintiff at Pomona, California, for transportation to Indianapolis, Indiana. The declaration charged that the defendant as common carrier had failed to safely carry and deliver the shipment and that as warehouseman it had failed to safely store the shipment at Indianapolis. The lemons were shipped under a standard form of bill of lading approved by the Interstate Commerce Commission.

It was stipulated on the trial that in compliance with section 6 of the Interstate Commerce Act, tariff schedules had been filed with the Interstate Commerce Commission establishing freight rates, between North Pomona, California, and Indianapolis, Indiana; that said tariffs provided for the collection of a demurrage charge of $1 a day, exclusive of Sundays and holidays, commencing 48 hours after notice of arrival at destination "had been given," but did not provide that shipments of perishable freight, such as lemons, would be furnished artificial heat by the defendant or its connecting carriers at Indianapolis, Indiana, or otherwise

Mutual Orange Distrib. v. A., T. & S. Fe Ry. Co., 217 Ill. App. 23.

protected during cold weather, nor did said schedules
or tariffs "fix any charge for the performance of such
service." It was further stipulated that "no applica-
tion had been made to the Interstate Commerce Com-
mission to compel carriers at Indianapolis, Indiana,
to protect shipments from cold by furnishing artificial
heat." It was stipulated also that the shipment con-
sisted of 319 boxes, weighing 26,796 pounds; that the
lemons were loaded on a standard refrigerator car,
the kind ordinarily used for the transportation of cit-
rous fruit, on January 12, 1917, and that the car ar-
rived in Indianapolis at 12:10 p. m. January 26, 1917;
that the consignee of the lemons was at once notified of
the arrival of the shipment.

There is some conflict in the evidence as to the con-
dition of the vents on the car after the lemons had
arrived at Indiana. The freezing of the lemons oc-
curred after they arrived at Indianapolis and after
the consignees had been served with notice of their
arrival. The freezing could have been prevented if
heater stoves had been placed in the car during the
time it remained on the tracks at Indianapolis.

A witness was permitted to testify, over the objec-
tion of defendant, that carriers at Chicago and Minne-
apolis furnished heater service for cars containing
perishable freight.

Defendant's counsel offered to prove that while
heaters were customarily placed in cars containing
fruit at Indianapolis, such heaters were at all times
installed therein by the receivers or owners of the
shipments. An objection to this proof was sustained
and the evidence excluded on the ground, apparently,
that it was immaterial and that it was the duty of the
railroad company as a matter of law, by the furnishing
of heaters or otherwise, to protect the shipment from
freezing.

The main controversy between the parties in-
volves a question as to whether the delivering carrier

26    Appellate Courts of Illinois.

Mutual Orange Distrib. v. A., T. & S. Fe Ry. Co., 217 Ill. App. 23.

was required, as a matter of law, to furnish heater service at Indianapolis in the car which contained the lemons. No express provision for the furnishing of this service appears in the contract of shipment, nor is it expressly provided for in the tariff schedules filed in the office of the Interstate Commerce Commission. The bill of lading does contain a provision that the lemons were received "subject to a reasonable charge for storage and to carrier's responsibility as warehouseman." While the pleadings in the case on their face do not purport to present a federal question, such question does appear from the evidence admitted on the trial.

The United States Supreme Court, in the case of *Southern Ry. Co. v. Prescott,* 240 U. S., on page 640 said:

"And the question as to the responsibility under the bill of lading is none the less a federal one because it must be resolved by the application of general principles of the common law. *Adams Exp. Co. v. Croninger, supra* [226 U. S. 491]; *Missouri, K. & T. Ry. Co. v. Harriman, supra* [227 U. S. 657]. It was explicitly provided that in case the property was not removed within the specified time, it should be kept, subject to liability 'as warehouseman only.'"

In the case of *Cleveland, C., C. & St. L. Ry. Co. v. Dettlebach,* 239 U. S. 588, the court said:

"We recognize the cogency of the reasoning from the standpoint of the common-law responsibility of a railway company as carrier and as warehouseman. But we have to deal with the effect of an express contract, made for the purpose of interstate transportation, and this must be determined in the light of the act of Congress regulating the matter. The question is federal in its nature." *Atchison, T. & S. F. Ry. Co. v. Harold,* 241 U. S. 371.

Section 1 of the act to regulate commerce provides that the term "transportation" includes "all services in connection with the receipt, delivery, elevation and

transfer in transit, ventilation, refrigeration or icing, storage and handling of property transported.'' Section 6 of the act requires that all carrier's schedules ''shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the Commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, effect, or determine any part of the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper or consignee.'' This act prohibits a carrier from making any contract with a shipper for any privilege or facilities in transportation, except such as are specifically set forth in the filed tariff schedules.

In the case of *Cleveland, C., C. & St. L. Ry. Co. v. Dettlebach, supra,* a case where goods were lost through negligence of a terminal carrier while in his possession as warehouseman, it was held:

''From this and other provisions of the Hepburn act it is evident that Congress recognized that the duty of carriers to the public included the performance of a variety of services that, according to the theory of the common law, were separable from the carrier's service as carrier, and, in order to prevent overcharges and discriminations from being made under the pretext of performing such additional services, it enacted that, so far as interstate carriers by rail were concerned, the entire body of such services should be included together under the single term 'transportation,' and subjected to the provisions of the act respecting reasonable rates and the like.''

We are asked to reverse the judgment of the trial court for an alleged error of the court in refusing to admit evidence tendered by the defendant of a custom which prevailed in Indianapolis under which it was the practice of the consignees of transported goods to provide heater service in the cars. Notwithstanding the

28 . APPELLATE COURTS OF ILLINOIS.

Mutual Orange Distrib. v. A., T. & S. Fe Ry. Co., 217 Ill. App. 23.

fact that the plaintiff was permitted to prove a custom prevailing in Chicago and Minneapolis which showed that heater service was in fact provided by carriers, the court refused to allow the defendant to prove that such service was performed under a rule of the Interstate Commerce Commission which permitted a charge of $2 per car for each 24 hours "when carriers furnish artificial heat for carload shipments of perishable freight while standing on tracks and awaiting disposition," etc. The defendant offered proof, which was excluded, that the delivering carrier did not provide heater service in the cars at Indianapolis and that this service was customarily performed by the consignors or consignees of such goods.

The case of *Atchison, T. & S. F. Ry. Co. v. United States,* 232 U. S. 199, involved the question whether a shipper had the right to place ice in bunkers in cars against the carrier's wishes. While this case had to do with a service connected with the loading of freight cars, it, the service, was incidental to a contract for the transportation of goods. In deciding the case the court said:

"For in the shipment of fruit, as in that of other articles, it is impossible to lay down a rule which definitely fixes what loading includes and by whom it must be done. Nor is there any consistent practice on this subject, since from reported cases it appears that the claims of the parties are based rather on interest than on some definite principle. Sometimes the shipper, as here, insists on the right to load and provide necessary appliances. At other times he demands that such services and appliances be furnished by the railroad company. Conversely, the carriers sometimes claim, as here, the right to furnish service and facilities, while in other cases insisting that the one or both must be suppled by the consignor.

\*          \*          \*          \*          \*          \*          \*

"The freight may be such as to require special covering, packing, icing or heating, in order to preserve the

merchandise in condition fit for use at the end of the journey. Who is to furnish these needed facilities may be quite as uncertain as who is to place the freight in the car, and can only be determined by considering the character of the shipment, the place where the loading begins, and who can most economically perform the service required.

"Neither party has a right to insist upon a wasteful or expensive service for which the consumer must ultimately pay."

And so in the present case, we believe it was proper for the defendant to show that it was a prevailing custom at Indianapolis for consignees of transported goods to provide for heater service necessary to protect such goods from freezing, and that as a matter of fact it, the delivering carrier, had no equipment for doing this service and did not, in any case, perform it.

The defendant's charge was $1 a day for the detention of the car after the 48-hour period and notice to consignee. This charge in accordance with the filed schedule did not include any charge for heater service.

In the case of *Southern Ry. Co. v. Prescott, supra,* the United States Supreme Court held that where in a bill of lading of an interstate shipment it was provided that the carrier should be held liable as warehouseman only after the goods had arrived at their destination, such carrier could only be held upon proof of negligence. Whether the delivering carrier in the present case can be said to have been guilty of negligence depends upon whether it had by any act of commission or omission violated any duty which it owed to plaintiff to protect the fruit from freezing while it remained in the car on the tracks at Indianapolis; the express contract is silent on the question. The federal cases seem to hold that the duty to furnish heater service is not imposed by federal law upon defendant as warehouseman. Whether defendant was bound by contract to perform the service would, of course, de-

30    APPELLATE COURTS OF ILLINOIS.

Mutual Orange Distrib. v. A., T. & S. Fe Ry. Co., 217 Ill. App. 23.

pend upon the terms of the contract. As stated, it was not so bound by any express terms therein, nor was it so bound by the federal statutes, by the rules of the Interstate Commerce Commission or the filed tariff schedules. Clearly, then, if it is sought to read into the contract an implied promise on the part of the defendant to perform the service, it was competent for defendant to show that by a general custom prevailing in Indianapolis it was the constant practice of owners and consignees of transported goods to provide heaters for perishable goods cars while they remained on the tracks at Indianapolis. Evidence of this custom was most material in the case, as without some evidence on this question it is impossible to say whose duty it was to furnish the heater service. The exclusion of the evidence with respect to the alleged custom left the jury with the impression that the defendant was required, as a matter of law, to perform this service. The duty imposed upon defendant by the bill of lading to keep the vents on the refrigerator car in proper condition was a question which under the evidence was properly submitted to the jury. But we think that the jury should also have had submitted to it the doubtful question whether the freezing of the lemons was caused by the alleged open vents or by the admitted failure to provide heaters in the car. The testimony of one of the plaintiff's witnesses was to the effect that if heaters had been placed in the car the shipment would not have frozen. Otherwise stated, nothing being shown by the evidence of an intention or a promise on the part of defendant or its delivering carrier to perform this service or to make a charge therefor, it was proper for defendant to show that as a matter of custom it had never performed any such service for the plaintiff or other shippers.

The plaintiff seeks to charge defendant with liability for the freezing of the lemons in the cars while on the tracks of the delivering carrier at Indianapolis, and

in aid of its case it proved that carriers in Minneapolis and Chicago furnish heater service for cars containing perishable products. The admission of this evidence was error, we think; but in any event it is difficult to see why proof was not admissible which tended to show that this practice was the result of an Interstate Commerce Commission rule which provided for a charge of $2 a car for heater service rendered shippers at Chicago and Minneapolis; proof of this rule was excluded.

For the error of the court in excluding the offered testimony, and its rulings on certain instructions, a consideration of which involves in the main only the questions discussed, the judgment of the county court will be reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*

Mr. Presiding Justice McSurely and Mr. Justice Holdom concur.