John E. House, Appellee, v. William W. Wheelock and William G. Bierd, Appellants.

Gen. No. 8,266.

Opinion filed April 17, 1929.

W. K. Bracken, for appellants; Silas H. Strawn, of counsel.

Chas. M. Peirce and Hubert J. Thompson, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

This case was before this court at a former term, and for a statement of the facts reference is made to *House v. Wheelock*, 244 Ill. App. 270.

On the second trial of the cause the proofs on the issues were somewhat changed and the record before us presents the issue whether appellants received in good order the 520 baskets of peaches at Jerseyville, on Sunday and Monday, August 5 and 6, 1923, for shipment to Bloomington, and whether appellants were guilty of any negligence in the transportation of said car of freight which left Jerseyville at 12:08 a. m. Tuesday, August 7, by fast freight and arrived at Bloomington at 10 o'clock in the forenoon of the same day, a distance of 136 miles, passing through Roodhouse and Mason City, where appellants had re-icing facilities.

The car for the shipment was ordered by the shipper on Friday evening, August 3, to be placed on the tracks of Jerseyville fully iced for loading peaches Sunday, August 5, and appellants placed the car on said tracks late Saturday evening. Although the car arrived at the place of destination on Tuesday, August 7, in the forenoon, appellee did not call for or claim the shipment until some time on the 9th, and upon the 8th appellants, of their own motion, without any order, re-iced the car, the shipper having given no orders or directions as to re-icing in any manner. The peaches were packed in baskets which were made of thin strips of wood, with little cracks or openings between the strips hardly one-fourth of an inch in width, and these strips were held by joints. There was a

wooden lid fastened on top of the baskets and right under this a pasteboard carton on top of the peaches. The top is a solid wooden top and fits tight over the top of the basket. One cannot view the peaches or examine the fruit without removing the cover and lid of each basket.

Appellants offered in proof, over the objection of appellee, portions of the bill of lading, reciting: ''Received, subject to classification and tariffs in effect on the date of the issue of this shipping order . . . the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below,'' etc. Under the proofs it is not disputed that the contents of the baskets could not have been examined by appellants, or their agents, except by removing the covers and going through each basket, which was not done. When the car was opened at Bloomington it was found that many of the baskets of peaches which were on the top tiers in the car and loaded last, were spoiled and there was testimony produced tending to show that this condition could have resulted from appellant's failure to re-ice the car at Roodhouse or Mason City on the morning of August 7. There is testimony in the record also, produced by appellants, tending to show that it rained hard at Jerseyville on Sunday night, August 5, and Monday forenoon, and that the last part of peaches loaded were gathered and packed while damp and wet, which would result in their spoiling when placed in the car. The bill of lading contained the limitation that:

''No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, the authority of law, or the act of default of the shipper or owner, or for natural shrinkage.''

There are two counts in the declaration, one alleging general negligence on the part of appellants, and the second count alleging specific negligence upon the failure of appellants to re-ice said car. Appellants filed the general issue. Special pleas were presented but were stricken on motion of appellee as constituting the general issue only. The declaration states nothing as to the condition of the fruit when loaded into the car and shipped. There was a trial by jury, a verdict in behalf of appellee in the sum of $635, motion for new trial overruled and a judgment against appellants, who have brought the record to this court for review.

The peaches were raised by and on the farm of Chris. Ringhausen at Jerseyville, who, with his boys, picked, packed and loaded the car of peaches. On Monday, while the car was being loaded, the peaches were sold to Charles Siebermann who consigned the car to appellee. Siebermann testified and stated that on Monday forenoon he went into the car and crawled on top of the tiers of baskets on the end of the car which was loaded, and opened the lid of a few baskets on top, removed the corrugated paper and examined the fruit in a few of the last-loaded baskets. The car was loaded in tiers on the floor of the car first, then in order, and the top tier loaded last. This was necessary so that in loading joints could be broken and one basket above would be placed over part of two baskets below and not one basket directly above another. Siebermann examined not over ten boxes in all, and it is uncertain whether he examined boxes loaded on Sunday or Monday. He testified that the peaches he examined were sound and dry.

On the trial appellee assumed the burden of showing the nature of the peaches loaded into a car, as he was required to do. He produced E. L. Ringhausen, a son of Chris. Ringhausen, who testified that he did none of the picking, packing, sorting or boxing of the

fruit, but merely drove the truck and loaded the baskets into the car. He was permitted to testify, over the objection of appellants, that the peaches were all hand picked and hand sorted and that none but sound, dry and merchantable peaches were packed in the baskets, although the witness saw none of this work done and knew nothing about it. The peaches were all picked, sorted and packed by the father, Chris. Ringhausen, and two sons other than the witness and with other help whom the witness did not know. A load was prepared while the witness would drive to Jerseyville with a truck load and load from the truck into the car. The witness did not testify that he saw a peach picked or sorted or that he looked into any basket or examined any of the fruit; but only drove the truck two miles to Jerseyville and loaded the baskets into the car. The Siebermann testimony on further examination shows that when this witness examined the car there were only two tiers of baskets on the floor and they were commencing the third tier. It is not shown that Siebermann saw any of the baskets packed in the car on Monday and there were no other proofs in the record as to the condition of the peaches when loaded. No effort was made to produce Chris. Ringhausen, who owned the peaches, or his sons Charles and Stephen, who assisted their father in picking and packing the fruit and knew about it. Both were at their father's home near Jerseyville and neither they nor their father appeared at either trial. The son Charles sold the car to Siebermann and did the billing. There was direct proof that it rained hard Sunday night and rained Monday afternoon, which the witness Ringhausen partially admits. Appellee testified that when he opened the car at Bloomington he stated to appellant's agent, Conley, that the baskets on the top row looked like they had water in them; that water was found standing on the cardboard cover under the basket lids and in some

of the baskets water had gone through the cardboard down into the peaches, especially in the baskets in the top tier of the car. Substantially all of the peaches in the two lower tiers of baskets in the car were found sound and merchantable and we must conclude that it was error to permit the witness Ringhausen to testify to the condition of the peaches that he did not see picked, sorted or packed and about which he could have had no knowledge other than hearsay.

There was no competent testimony in the record showing the condition, when loaded, of the peaches found injured and damaged on the arrival of the car at Bloomington. But appellee contends that the rule is, the bill of lading being in evidence stating that the goods were received "in apparent good order" (with a limitation), that unless the shipper accepted the contract and understood and assented to the restrictive provisions thereof he will not be bound thereby, and that appellants are bound by the receipt that the goods were in good order, citing *Plaff v. Pacific Exp. Co.,* 251 Ill. 243. The *Plaff* case arose upon a cause of action which accrued in 1906. In 1911 the Legislature passed the Uniform Bills of Lading Act, section 10 Cahill's St. ch. 27, ¶ 11, of which provides:

"Except as otherwise provided in this Act, where a consignor receives a bill and makes no objection as hereinafter provided to its terms or conditions, neither the consignor or any person who accepts delivery of the goods, or any person who seeks to enforce any provision of the bill, shall be allowed to deny that he is bound by such terms and conditions, so far as they are not contrary to law or public policy: *Provided,* that any objection to the lawful terms and conditions of said bill shall be made in writing, which only need state the mere fact of such objection, by the consignor within three hours after receiving said bill, and all such bills shall have attached to the same a blank form for

such objection. Thereupon it shall be the duty of the officer, agent or servant of the carrier to take up such bill of lading so objected to, and upon request of such officer, agent or servant, it shall be the duty of the consignor to surrender such bill of lading and thereupon such officer, agent or servant shall issue an unconditional bill under which the consignor shall pay the lawful freight rate.''

The uniform bill of lading upon which the shipment involved in the case at bar was made, and to which presumably no objection was offered by the consignor (there being no evidence to the contrary), contains the following provision:

''No carrier or party in possession of any of the property herein described shall be liable for any loss thereof, or damage thereto, or delay caused by the act of God, the public enemy, quarantine, the authority of law, or the act or default of the shipper or owner.''

This statute has been construed in *Bean v. Jackson,* by this court, 207 Ill. App. 577, 582, the court holding:

''The Uniform Bills of Lading Act has not changed the rule as to the effect of such limitation of liability stipulations, but has changed the rule in regard to the proof of the making of the contract, or, in other words, of the assent of the shipper to the limitation stipulations. Formerly the carrier was bound to prove the shipper's knowledge of such stipulations limiting liability, and his assent thereto. *Wabash R. Co. v. Thomas,* 122 Ill. App. 569; *Chicago & N. W. Ry. Co. v. Calumet Stock Farm,* 194 Ill. 9; *Cleveland, C., C. & St. L. Ry. Co. v. Patton,* 203 Ill. 376. Now under the act referred to, when it is established that the shipper has received a bill of lading containing such stipulations and makes no objections thereto and particularly when he has signed the same, he is conclusively presumed to have known and assented to the same and is not allowed to deny that he is bound thereby. The judg-

ment will therefore be reversed with a finding of fact to be incorporated in the record of this court.''

Section 23 of the Uniform Bills of Lading Act, Cahill's St. ch. 27, ¶ 24, further provides:

"If, however, the goods are described in a bill merely by a statement of marks or labels upon them or upon packages containing them, or by a statement that the goods are said to be goods of a certain kind or quantity, or in a certain condition, or it is stated in the bill that packages are said to contain goods of a certain kind or quantity or in a certain condition, or that the contents or condition of the contents of packages are unknown, or words of like purport are contained in the bill, such statements, if true, shall not make liable the carrier issuing the bill, . . . the carrier shall not be liable for damages caused by the improper loading or by the non-receipt or by the misdescription of the goods described in the bill.''

This section has also been construed in *Keystone Oil & Mfg. Co. v. Illinois Cent. R. Co.*, 207 Ill. App., 243; *Fox v. Chicago & N. W. Ry. Co.*, 199 Ill. App. 453. Such limitations, where not restricting the carrier's common-law liability, are not against public policy or unlawful. (*Illinois Match Co. v. Chicago, R. I. & P. R. Co.*, 250 Ill. 396; *Cleveland, C., C. & St. L. Ry. Co. v. Patton*, 203 Ill. 376.) The contrary holding in *Lino v. Northwestern Pac. R. Co.*, 246 Ill. App. 451, 454, involved an interstate shipment and was governed by the Carmack amendment to the Hepburn act and the court held:

"That part of the Carmack amendment to the Hepburn act governing the shipment in question is contained in section 20 of the Interstate Commerce Act, and *inter alia* provides that the carrier 'shall issue a receipt, a bill of lading therefor, (for the shipment), and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it

or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass . . . and no contract, receipt, rule, regulation or other limitation of any character whatsoever, shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; and any such common carrier . . . shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage or injury to such property caused by it or by any such common carrier, . . . to which such property may be delivered or over whose line or lines such property may pass, . . . notwithstanding any limitation of liability or limitation of the amount of recovery . . . .'

"The bill of lading being a through bill of lading, the attempt by defendant to limit its liability therein was impotent to effect such purpose. The shipment was in all respects governed by and subject to the Carmack amendment quoted from *supra,* and there could be no deviation therefrom, so far as the act by its provisions imposed liability upon the carrier.

"The bill of lading will be construed against the carrier and in favor of the shipper as the carrier made the contract. The bill of lading recites that the grapes were received 'in apparent good order,' and the vague recitation of an absence of such knowledge will not be received to modify in any manner the express acknowledgment of defendant that they were received 'in apparent good order.' To defeat the operation of such admission the burden was on defendant to show by pertinent evidence that the grapes were not in good order when they were received for shipment by the carrier defendant. Such exculpating proof we do not find in the record. The grapes being in good order, according to defendant's bill of lading, at the time of

shipment, proof of damage at point of destination, Chicago, made a *prima facie* case against defendant, entitling it, in the absence of contrary proof, to recover.''

In the case at bar the shipment was intrastate and is governed by the Uniform Bills of Lading Act of Illinois and the cases cited, *supra.*

Under the proofs presented and the law, it must be held that there was not competent testimony in the record sufficient to fix and determine appellants' liability or the amount of the damage, if any.

Both parties to this appeal have argued strenuously for and against the duty of the carrier to re-ice the car under all circumstances, and the possible negligence of the carrier in that behalf. The proof is undisputed that when the car was set on the tracks at Jerseyville on Saturday evening it was properly iced and equipped for carrying fruit. It so remained properly iced during Sunday and Monday while the car was being loaded. Appellants sought to establish a custom of their road not to re-ice cars or incur the expense unless so requested by the shipper. No such limitation was contained in the contract or shown to be within the knowledge of the shipper. No rule of statute or order of the Commerce Commission is shown. No particular light is thrown upon this question by any case decided in this State except *Mutual Orange Distributors v. Atchison, T. & S. F. Ry. Co.,* 217 Ill. App. 23, and what is said in that case is not conclusive. Some light is thrown upon this question by the case of *Mittenthal Bros. v. Michigan Cent. R. Co.,* 176 Ill. App. 77, where a car of apples was shipped from Battle Creek, Michigan, to Chicago, where the carrier expressly limited its liability from leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet or decay. The property was shipped under a classification as fifth class. The court say:

''The contract of affreightment exempted the defendant from liability for loss or damage to freight by

heat. Such exemption is reasonable and not against public policy where the heat was not caused by the negligence of the defendant. The question then is presented whether the defendant was guilty of negligence in failing to re-ice the car. If it be conceded that the defendant ordered a refrigerator car Monday, June 15, such a car with 4,000 pounds of ice in its bunkers was sent from Jackson to Battle Creek that day. The only testimony in the record as to the time which such a quantity of ice would last, was that it would last about thirty-five hours if the car was empty and the doors kept shut, and a less time if the car was filled. It was forty-eight hours from the time the ice was put in the car to the time the loading was completed, and the shipping order given.

"The official classification provided that the consignors should furnish at their own cost ice furnished for property classified less than third class. The apples were classified fifth class, and we think that if the plaintiffs wished to have the car re-iced before it left Battle Creek, or thought it necessary that it should be re-iced then, they should have notified the defendant and requested it to re-ice the car. Plaintiffs were at the place of shipment. They knew that the car was iced Monday and that if it was re-iced it would be at their cost. They had the right to order the car re-iced or let it go forward without re-icing, and they gave no order to have the car re-iced. We do not think that under the circumstances the defendant was bound to re-ice its car at Battle Creek or between Battle Creek and Chicago without a request to do so by the plaintiffs, and that its failure to so re-ice the car was not negligence.

"Neither can we say that the defendant was bound to know that apples in a car without ice would be damaged in shipment for the distance between Battle Creek and Chicago and taking the time required to carry the apples in question to Chicago. In *Beard v. Illinois*

*Cent. R. Co.,* 79 Iowa 518, relied on by the defendant in error, butter was carried by the defendant in hot weather from DuQuoin, Illinois, to New Orleans in a box car, and it was held that the employees of defendant must be presumed to know that butter carried in ordinary cars to New Orleans in summer would be greatly injured by the ordinary heat of the climate. Here the distance was not great and there was no difference in climate.

"Our conclusion from all the evidence is that it fails to show that the defendant was guilty of negligence in respect to the apples in question, and therefore, under its contract of affreightment, was not liable for damage to such apples by heat."

This case differs from the case at bar. If appellants could have shown a well-followed custom on their part, known to the shipper, or which by the exercise of due care the shipper could have known, not to re-ice cars unless ordered so to do by the shipper, there being no rule of the Commerce Commission upon that subject, we are of the opinion, under all the facts in this case, that appellants should have been permitted to show the custom. The facts in the case of *Beard v. Illinois Cent. R. Co., supra,* present an entirely different case. Siebermann examined the car and the icing on Monday about noon. He found the bunkers about two-thirds full of ice and expressed the opinion that there was sufficient ice to carry the car to Bloomington. Siebermann was then the owner of the fruit and became the consignor of the car. The car stood on the tracks at Bloomington two full days before appellee claimed the shipment and opened the car. No sufficient excuse is shown for the delay and during this interval appellants re-iced the car. Appellee's delay and possible negligence should have been fully presented to the jury.

Appellants complain of all the instructions given for appellee. The second instruction given for appellee is as follows:

"If the jury believe from the evidence that the defendants received the peaches in question for shipment and gave the bill of lading introduced in evidence acknowledging the receipt of such peaches, then the bill of lading is *prima facie* evidence that the peaches mentioned therein were, at the time they were received, in apparent good order and condition and is binding on the defendants unless you further believe from the evidence that the peaches were not in good order and condition at the time they were received for shipment."

Under this instruction the language of the Uniform Bills of Lading Act is rendered meaningless and in every shipment made the carrier would be required, for its proper protection, to open boxes, examine goods and advise itself as to the real order and condition of the shipment made. In this case the consignor billed the goods and appellee accepted the same under a written contract that "the contents and condition of contents of the packages shipped was unknown to the carrier," and if the Uniform Bills of Lading Act is to have any effect, there can be no presumption in this case that the packages and their contents were in apparent good order. This appellee was required to establish by the proofs and attempted to do so, but the proofs submitted were so defective that in the opinion of this court the verdict should be set aside and the cause submitted to another jury.

There were other errors in the rulings on the admission and rejection of testimony which will doubtless be corrected on another trial.

We make no comment upon the other instructions as we do not have before us the instructions given on the former review further than the instructions set out in the opinion in *House v. Wheelock, supra.*

*Reversed and remanded.*